# CHARLESTON.

BANK *v.* LUMBER CO.

*(GREEN, JUDGE, absent.)

Submitted January 22, 1889.—Decided March 7, 1889.

DEED—CORPORATIONS.—ESCROW.

After the corporators had signed an agreement to become a corporation, and before the charter had been obtained, a deed conveying land to such corporation by name was signed and acknowledged by the grantor and delivered to a third party with directions to retain it, until the corporation obtained its charter and organized, and then to deliver it to the corporation; and after the charter had been received, and the corporation had organized under it, such third person delivered the deed to and it was accepted by the corporation. *Held:* The said deed operated as a valid conveyance of said land to the corporation from the date of the delivery of said deed to it.

*C. Heydrick, J. J. Davis* and *L. D. Strader* for appellant.

*C. C. & W. L. Cole* for appellee.

SNYDER, PRESIDENT:

On December 7, 1886, the Spring Garden Bank, a Pennsylvania corporation, sued out of the clerk's office of the Circuit Court of Tucker county an attachment against the estate of Marcus Hulings, a non-resident of this State, and caused the same to be levied upon a number of tracts of land lying in the counties of Tucker and Randolph in this State. At the January rules, 1887, the said Spring Garden Bank suing on behalf of itself and other attachment-creditors exhibited its bill in said Circuit Court against the said Marcus Hulings, The Hulings Lumber Company, F. W. Mitchell and others to set aside a deed dated January 2, 1885, made by said Marcus Hulings to the said The Hulings Lumber Company purporting to convey to it the lands attached as aforesaid, and to subject said lands to the payment of certain debts due to the plaintiff and others from said Marcus Hulings. The bill assails said deed upon two grounds: *first*, that

*On account of illness.

there was no such body or corporation as The Hulings Lumber Company mentioned in the deed as grantee, at the time the deed was made, and, *second* that the said deed was voluntary and made for the purpose of delaying and defrauding creditors. Answers were filed by the defendants, and depositions taken, upon which the cause was heard, and a decree entered September 7, 1887, holding the said deed to be void, and referring the cause to a commissioner to ascertain and report the liens on said lands, *etc.* Upon the incoming of the commissioner's report, the court, on May 14, 1888, made a decree fixing the amounts and priorities of the various liens on said lands and directed a sale thereof. From this decree and that of September 7, 1887, the defendant, The Hulings Lumber Company, obtained this appeal.

The facts disclosed by the record appear to be as follows: During the years 1882, 1883 and 1884 Marcus Hulings purchased certain timber-lands and took options to purchase other lands in the counties of Tucker and Randolph along or near the Cheat river and its tributaries. On some of said lands he paid a part of the purchase-money, the whole amount paid by him not exceeding $10,000.00 and obtained deeds therefor giving his notes for the balance amounting in the aggregate to about $50,000.00, which were secured by vendors' liens retained in the deeds. On other portions of the lands he paid nothing, and for others still he had no deeds. By a written agreement dated April 30, 1884, the said Marcus Hulings, his son, Willis J. Hulings, and John E. Butler entered into copartnership under the name of Hulings & Co. for the purpose of dealing in petroleum, manufacturing lumber and buying, selling, holding and dealing in lands and buildings and operating saw-mills *etc.*, and carrying on a general lumber-business. The said Marcus Hulings for the consideration stated in said agreement sold to his son and said Butler a two thirds interest in all of said lands and options, thus making the said Marcus Hulings, Willis J. Hulings and the said Butler, each the owner of one third of said lands, subject to the vendors' liens existing thereon; and on the same day the said Marcus Hulings by a contract in writing bound himself to convey all of said lands subject to the said vendors' liens to a trustee, to be appointed by the said

firm of Hulings & Co., as soon as surveys thereof could be completed and the titles passed upon by counsel. The said firm at once entered into the possession of said lands and began to operate them in the lumber-business and purchased other lands with partnership-funds taking the title in the name of said Marcus Hulings, who was to convey the whole of said lands to a trustee, when appointed as designated in said agreement. The said firm also took up a large number of the notes, which had been given by said Marcus Hulings for said lands.

Before the conveyance of said lands or the selection of a trustee, to whom they could be conveyed, the said firm of Hulings & Co. decided to become an incorporated body, and that said conveyance should be made to said corporation instead of to a trustee. Accordingly, on January 2, 1885, the parties duly executed an agreement to become a corporation of the state of West Virginia by the name of "The Hulings Lumber Co.," and on the same day but subsequent to the execution and filing of said agreement the said Hulings & Co. by a writing duly signed by said firm, agreed that they would "cause to be conveyed unto said corporation" all the aforesaid lands, to which Marcus Hulings held the title, and also the mills and other property, that had been acquired by said firm in the lumber-business subsequent to the date of the aforesaid agreement of April 30, 1884. In pursuance of this writing or contract of January 2, 1885, a deed was written, signed, sealed and acknowledged by Marcus Hulings and wife conveying to The Hulings Lumber Company all of said lands, subject to the vendors' liens still existing upon them for unpaid purchase-money amounting to over $30.000.00. This deed was placed in the hands of John E. Butler with the understanding, that he was to deliver it to The Hulings Lumber Company, as soon as it should be organized and issue stock in payment for said lands to the corporators. On February 20, 1885, a certificate of incorporation was issued by the secretary of state of West Virginia for said corporation, and on March 28, 1885, the stockholders met and duly organized and elected a board of directors, and on the same day the board of directors met and elected the following officers: Willis J. Hulings, presi-

dent; John E. Butler, treasurer; and D. W. Osborne, secretary. At said meeting the president and secretary were authorized to issue $150.000.00 of the capital stock of the corporation in payment for said lands, and thereupon at said meeting John E. Butler delivered said deed, and it was duly accepted by the corporation, and the capital stock was issued and delivered in payment for said lands. The corporation took possession of the lands engaged largely in the lumber-business paid off part of the out standing notes for the purchase-money induced F. W. Mitchell & Co. to take up the balance and executed a trust-deed on said lands, dated February 6, 1886, to secure F. W. Mitchell & Co. for the purchase-notes so paid by them. The said deed to The Hulings Lumber Company was duly recorded in Tucker county on April 3, 1885, and in Randolph county on April 20, 1885; and the said trust-deed to secure F. W. Mitchell & Co. was duly recorded in said counties prior to March 6, 1886.

On October 27, 1886, the plaintiff, The Spring Garden Bank, recovered in the Supreme Court of the state of New York, in and for the city of New York, a judgment against Marcus Hulings for $3,374.00 with costs and damages; making an aggregate sum of $3,622.07. Upon this judgment this suit is founded. The note upon which said judgment was recovered was given by Hulings on September 29, 1884, but according to the testimony of Marcus Hulings, which is not contradicted, the said note was not negotiated so as to make it a liability upon him until about the middle of June, 1885, more than two months after the date of the deed to The Hulings Lumber Company.

The first question presented is: Is the deed to the Hulings Lumber Company void, because at the date of said deed, the said company had not been incorporated? This inquiry involves the essentials of a valid conveyance of real estate. The law requires more form and solemnity in the conveyance of land than in that of chattels. It is only necessary here to consider conveyance by deed. A deed is a writing sealed and delivered; and to be duly executed it must be written on paper or parchment. Co. Litt. 35b. There must of course be both a grantor and grantee to every deed. In order to be

a grantor the party must be *sui juris*, and capable of contracting; but such is not the case with respect to the grantee. Any person capable of holding lands, including corporations, idiots, persons of unsound mind and infants, may be the grantee in a deed.   Delivery is an incident essential to the due execution of a deed, for it takes effect only from the delivery.   The delivery may be by the grantor to the grantee or to any other person authorized by him to receive it.   It may be delivered to a stranger as an escrow, which means a conditional delivery to a stranger to be kept by him until certain conditions be performed and then to be delivered over to the grantee.   Generally an escrow takes effect from the second delivery, and is to be considered as the deed of the party from that time; but this general rule does not apply when justice requires a resort to fiction. 4 Kent, Comm. 453; *Fewell* v. *Kessler*, 30 Ind. 195; *Gilmore* v. *Morris*, 13 Mo. App. 114.   A writing delivered to a stranger for the use and benefit of the grantee, to have effect after certain event or the performance of some condition, may be delivered either as a deed or as an escrow.   *Hatch* v. *Hatch*, 9 Mass. 307; 1 Devl. Deeds, § 275.   According to all the authorities delivery, whatever may be its form or the manner in which it is made, is absolutely essential.   It is the final act, without which all other acts and formalities are ineffectual; and the deed takes effect only from its actual or constructive delivery. Devl. Deeds § 260; Bish. Cont. § 26; 3 Washb. Real Prop. 300.

The foregoing are elementary principles.   The important question however in this cause is :   Is the deed from Marcus Hulings and wife to The Hulings Lumber Company void and ineffectual for the want of a grantee ?   It is admitted that a grant *in præsenti* to a person not *in esse*, at the time the deed is delivered, would be inoperative; and likewise a deed to a corporation never created or organized would be void. *Hulick* v. *Scovil*, 4 Gilman, 191; *Harriman* v. *Southam*, 16 Ind. 190; *Russell* v. *Topping*, 5 Macl. 202.   These cases and others of the same character fully sustain the doctrine, that a deed to a corporation not in existence or to one incapable by its charter of holding real estate or to a person not *in esse* at the time of the delivery of the deed is void; but I have

been unable to find any case, in which it has been decided, that a deed made to a corporation having a potential existence at the date of the deed, and which had obtained its charter and completed its organization, at the time the deed was delivered to it, was void or ineffectual as a conveyance to the corporation. On the contrary in *Wharf Co.* v. *Judd,* 108 Mass. 224, the court held, that a deed conveying land to a corporation dated after the date of its charter and before its organization was a valid conveyance. The court, in its opinion, on page 228, says: "The acceptance of the deed will be presumed as soon as the plaintiffs (the corporation) were competent to take it. *Bank* v. *Bellis,* 10 Cush. 276; *Ward* v. *Lewis,* 4 Pick. 518; *Bank* v. *Dandridge,* 12 Wheat. 64, 70. And these plaintiffs could accept a deed as soon as they became competent to make a contract under their charter." In *Drury* v. *Foster,* the court, in its opinion, says: "We agree, if one competent to convey real estate sign and acknowledge a deed in blank, and deliver the same to an agent with authority, express or implied, to fill the blank, and perfect the conveyance, its validity could not be well controverted." 2 Wall. 33. As before stated, it is the delivery of the deed, that is the crowning act, which completes its execution, and is as essential to the transmission of the title as the deed itself. Acceptance by the grantee or some one for him, is an essential part of the delivery. It is true, an acceptance, where it is for the benefit of the grantee, will be presumed; still acceptance is a necessary incident to the conveyance. If therefore there is a grantee in existence at the time of delivery, and such grantee accepts the conveyance, I can see no reason either in law or reason, why the conveyance should not be sustained, especially in a case where justice and equity require it. It is the duty of courts to uphold rather than destroy deeds. *Sherwood* v. *Whiting,* 54 Conn. 330 (8 Atl. Rep. 80); *Flagg* v. *Eames,* 94 Amer. Dec. 363; *African M. E. Church* v. *Conover,* 27 N. J. Eq. 157; *Shed* v. *Shed,* 3 N. H. 432.

In the case before us the corporators of The Hulings Lumber Company on January 2, 1885, before the deed to it was executed, had duly signed and entered into articles in the form prescribed by the statute, by which they agreed to be-

come a corporation; and at the instance of said corporators Marcus Hulings and wife on the same day, but after said articles had been entered into, signed and acknowledged a deed to the corporation thus agreed upon, and partly created, for the lands in controversy. It is fully proved by both Marcus Hulings and John E. Butler, that this deed was delivered by the Hulings to said Butler to be held by him until The Hulings Lumber Company received its charter and organized, and then, upon the issuance of the stock in payment of the lands as agreed upon, Butler was to deliver the deed to the corporation; and it was also proved, that on March 28, 1885, after said corporation had fully organized under its charter and passed a resolution to accept the deed and issue the capital for the lands, Butler did deliver the deed to the corporation by whom it was accepted and afterwards, on April 3, 1885, duly recorded in Tucker county. It seems to me, that this deed under the facts and circumstances hereinbefore stated was a sufficient conveyance to vest the title to the lands therein mentioned in The Hulings Lumber Company. The said company was, at the time the deed was delivered to and accepted by it, a complete corporation duly chartered and organized; and not only this, but it had at the date of said deed a potential existence and subsequently became an actual and legal corporation. I am therefore clearly of opinion, that said deed did vest in the said Hulings Lumber Company the legal title to said land.

This conclusion renders it unnecessary to consider at any length the other ground, upon which said deed is assailed by the plaintiff's bill. It appears from the testimony of Marcus Hulings, and there is no evidence in the record contradicting him, that the notes, on which the plaintiff obtained its judgment, were wholly without consideration and never became legal and binding obligations upon him, until they passed into the hands of *bona fide* holders, and that no part of them did so pass into the hands of the plaintiff or any person, under whom it claims, until about the middle of June, 1885, which was more than two months after the title to said lands had vested in said company. If therefore it were conceded, that said deed was wholly voluntary and without any valuable consideration, in the absence of any proof of actual

fraud the plaintiff is in no position to assail or complain of it. There is no proof in the record of any actual fraud. On the contrary the answers of both Marcus Hulings and The Hulings Lumber Company deny, that the deed was either fraudulent or made without a valuable consideration. And these answers are supported by the evidence taken by and on behalf of the defendants. The plaintiff offered no evidence on these questions.

For the reasons aforesaid I am of opinion, that the decrees of the Circuit Court should be reversed, and the plaintiff's bill dismissed.

REVERSED. DISMISSED.