# CHARLESTON.

McClung et als. v. McClung et als.

Submitted May 9, 1916.    Decided May 23, 1916.

1. Vendor and Purchaser—*Enforcement of Vendor's Lien—Abatement of Purchase Money—Defects in Title.*

Defects in the title to the land, *prima facie* constitute ground of abatement of the purchase money, in a suit to enforce a vendors lien thereon.  (p. 488).

2. Same—*Enforcement of Vendor's Lien—Scope of Inquiry—Title—Parties.*

Though claimants of the land or parts thereof under adverse and hostile titles cannot be made parties to such a suit for trial of questions of title, the court may determine, for the purposes of the suit and as between proper parties thereto, whether the vendee obtained title to the land, by the conveyance.  (p. 488).

3. Same—*Vendor's Lien—Enforcement—Parties.*

Answers to a bill setting up three separate and successive vendors liens on standing timber and praying sale of the lien subject, which admit the liens so set up in favor of the respondents, make such respondents substantially co-plaintiffs and justify the court in treating them as such, though they are formally defendants.  (p. 489).

(Williams, President, absent.)

Appeal from Circuit Court, Greenbrier County.

Suit by J. O. McClung and others against C. L. McClung and others.  From decree for plaintiffs, the Sun Lumber Company and others appeal.

*Reversed and remanded.*

*Haymond & Fox,* for appellants.

*Henry Gilmer* and *S. N. Pace,* for appellees.

Poffenbarger, Judge:

This appeal is from a decree of sale, enforcing vendors liens on standing timber, at the instance of J. O. and L. E. McClung.  They purchased of C. L. McClung, paying part of the purchase money and taking the title subject to a vendors lien.

They sold at an increased price to Rider and Stalnaker, taking part of the purchase money in cash and reserving a vendors lien for the residue. Rider and Stalnaker sold Bright and Brewster at an increased price, taking part of the purchase money in cash and reserving a lien for the balance. Bright and Brewster conveyed to the Sun Lumber Co., a corporation. The first three sales were by the acre, the first at $10.00, the second $15.00 and the third $20.00.

The decree is founded upon the pleadings only, no proof having been taken. They disclose defects of title to portions of the land. As conveyed, the tracts are three in number, containing, respectively, 415 acres and 116 poles; 591 acres and 5,208 acres and 128 poles less 675 acres, making the net area 5,539 acres and 100 poles. No defects in the title are mentioned in the bill, but the joint and separate answer of Bright and Brewster and the Sun Lumber Co. avers, by way of defense, that the title to 50 acres of the land is in Peachy McClung, the title to another 50 acres, in Martha Smith and the title to 200 acres, in a trustee for Myrtle Smith. It also charges that this 200 acre tract is involved in a proceeding by the Commissioner of School Lands to sell it as having been forfeited to the State; that about 90 acres are claimed by the Gauley Coal Land Company; that a proceeding in the name of the state to sell lands in Greenbrier County involves about 1,000 acres of the land on which the timber purchased by them stands; and that all of these defects and the defaults for which the state is proceeding were occasioned by C. L. McClung, the original grantor. The special reply of the plaintiffs to this answer does not deny the existence of the defects alleged. On the contrary, it admits the allegations as to the two 50 acre tracts and partially admits the averments as to the 200 acre tract. As to the others it makes no denial, but says the answer discloses intent and purpose merely to delay collection of the purchase money, and that, in any event, more than $50,000.00 is due them and the abatements to which the respondents are entitled can be made from the purchase price after the lands are sold and the purchase money brought into court. Upon this theory, it prays an immediate sale of the timber. The separate answer of C. L. McClung, to the origi-

nal bill, does not mention the defects of title. It sets up his lien for purchase money, claims an additional amount on account of costs paid by him in the suit of A. D. Neill and others against himself and others, the decision in which is reported in 71 W. Va., 458, and expenses for an abstract and a survey, and prays inclusion of these amounts in the decree in his favor. To this answer, the plaintiffs filed a replication, setting up defects in the title, praying an abatement from the purchase money they owe him and denying the validity of his claims against them for costs and expenses. Rider filed an answer saying nothing about defects of title and praying enforcement of his lien.

The admissions of the plaintiffs, in their special reply to the cross-bill answer of Bright and Brewster and the Sun Lumber Co., dispense with the necessity of proof of the allegations of defects in the title. Some are expressly admitted and the others impliedly admitted by non-denial thereof.

As Rider and C. L. McClung join the plaintiffs in a prayer for the sale of the timber, they are virtually co-plaintiffs. The bill sets up all the liens and prays for sale of the lien subject. C. L. McClung expressly joined in the prayer of the bill. Rider impliedly did so by admission of the lien set up for him by the bill and praying a sale of the timber. Formally, they are co-defendants with Bright and Brewster and the Sun Lumber Co., but in reality are co-plaintiffs, and a court of equity may deal with them according to their substantial interests. *Sadler* v. *Taylor*, 49 W. Va. 104. The rules applicable to relief between co-defendants do not apply here, for this reason.

However the law may be in other jurisdictions, it *prima facie* gives right of abatement here. Even a covenant of warranty does not confer the right in cases of mere deficiency in quantity, but loss of land, by paramount title, is a different matter. In that event, there is right of abatement, even though the sale was one in gross. *Kinports* v. *Rawson*, 29 W. Va. 487; *Wamsley* v. *Stalnaker*, 24 W. Va. 214; *Hoke* v. *Jones*, 33 W. Va. 501. In all sales by the acre, deficiency in quantity as well as defect of title confers the right.

To decree enforcement of any lien without an ascertain-

ment of the amount due is reversible error. Here the court made no deduction for the loss of title. The abatements to which the vendees are entitled, if any, will reduce the amounts the vendors claim. Hence, the amounts for which the timber has been ordered sold are incorrect. The amount to be deducted, depends upon facts not fully developed·by the pleadings. As to the two 50 acre tracts, there is sufficient certainty, but not as to the 200 acres nor as to the 1,000 acres.

It is correctly assumed that the claimants of portions of the lands under hostile and adverse titles cannot be made parties to this suit. *Miller* v. *Morrison,* 47 W. Va. 664; *Dunbar* v. *Dunbar,* 67 W. Va. 518. But that does not preclude jurisdiction to determine the question of title between the parties to it for the purpose, and to the extent, of ascertainment of the amount of purchase money due. The adjudication would not bind the strangers, but it will settle the question in so far as it governs or controls the rights of the parties to this litigation. It is not essential to jurisdiction that the court shall have power to determine all questions pertaining to the status of property and as to all persons interested in it. The subject matter of this suit is purchase money, not title. The title is a mere collateral or incidental matter, to be considered as far as it is relevant and material and no further.

The decree complained of will be reversed and the cause remanded.

*Reversed and remanded.*