# CHARLESTON.

## McCullough v. Clark.

Submitted February 22, 1918.   Decided February 26, 1918.

1.  FRAUDS, STATUTE OF—*Contract for Sale of Real Estate—Shares of Stock.*

    Shares of stock in a corporation, the subject of sale and purchase by oral contract, are not real estate, affected by the statute of frauds, although the value thereof may depend on the use or ownership of real estate.   (p. 746).

2.  SPECIFIC PERFORMANCE—*Contract for Sale of Stock—Action for Damages.*

    Although under some circumstances equity will entertain jurisdiction to enforce specific performance of contracts for the sale of shares of stock in a corporation, nevertheless, a party has the right to elect to pursue his legal remedy by action at law for damages for breach of the contract.   (p. 747).

3. Frauds, Statute of—*Interest in Real Estate—Sale of Corporate Stock.*

Such right of action by the purchaser for damages for breach of the contract to sell can not be defeated by defendant by the interposition of the statute of frauds, because by the terms of a contract the price to be paid for such shares is to be ascertained in a way involving the value of the assets of the corporation, and collaterally also the legal or equitable right and title to some of the lands owned or claimed by it, the legal title to which is vested in the seller. (p. 747).

Error to Circuit Court, Upshur County.

Action by John W. McCullough against H. E. Clark. Judgment for defendant, and plaintiff brings error.

*Reversed, verdict set aside, new trial awarded.*

*Samuel T. Spears, E. D. Talbott* and *H. Roy Waugh,* for plaintiff in error.

*Young & McWhorter* and *J. M. N. Downes,* for defendant in error.

Miller, Judge :

In assumpsit plaintiff sought to recover damages laid in the declaration at $250,000.00, for the alleged breach by defendant of his oral contract made in April, 1915, to sell and transfer to plaintiff 760 shares of the stock of the Damascus Lumber Company, and of all his interest in said company, a Delaware corporation, alleged to be the legal or equitable owner of saw mills, timber, timber lands, railroads, rolling stock, and other property, located in the states of Virginia, Tennessee, and North Carolina, the legal title to some of which timber and timber lands was then vested in the defendant, but the equitable title whereto was in said corporation, the declaration alleging also that 240 shares, the residue of the capital stock of said company, already belonged to the plaintiff.

The price, or consideration, which by the contract, the declaration alleged plaintiff was to pay defendant for said 760 shares and for his interest in said company, and in the properties belonging to it as aforesaid, was to be ascertained by an audit of the books of the corporation by persons desig-

nated in the contract, and wherein defendant was to be credited with all the money advanced to the corporation or invested by him in said property, with interest at six per cent compounded every four months from the date of payments or investments, and by debiting him with all moneys or lumber received by him on account thereof, and the difference or balance which it is averred was thereafter shown by the audit made pursuant to said contract, to-wit, $132,377.84, as of May 1, 1915, was to be paid by plaintiff to defendant upon the same terms and conditions and in the same proportion relatively, as by the same contract and as a part thereof, the parties had agreed, and as the declaration alleges, plaintiff had in fact paid defendant for his interest in the stock and property of the Virginia Lumber Company, another corporation in which they also had been interested, and the consideration for which, paid and agreed to be paid, by plaintiff to defendant, was the sum of $325,000.00.

And the further averments of the declaration are that after the completion of said contract as to the property of the Virginia Lumber Company, and after the audit was made as aforesaid, defendant had refused to comply with the other part of his said contract to transfer and convey to plaintiff his stock and all his interest in the property of the said Damascus Lumber Company, although plaintiff had always been ready, willing, able, and anxious to perform his part of said contract, and whereby and by reason of the breach thereof by defendant, plaintiff had been greatly damaged and injured in the sum of $160,683.44, the difference between the value of said property and the sum of $132,377.84, which by the terms of said contract plaintiff had agreed to pay defendant therefor.

After the demurrer to the declaration, overruled, the only plea was non assumpsit. But on the trial the evidence showing that the legal title to some of the timber and timber lands was then invested in the defendant, and was so invested at the time of the purchase thereof and before the organization of said company, and as there was no contract in writing made by defendant directly with plaintiff or the Damascus Lumber Company to sell or convey said lands to

said company or to him, the statute of frauds was relied on as constituting a complete bar to the enforcement of the alleged contract for the sale and purchase of said stock, and moreover, that as the contract sued on was one of entirety it could not be enforced in part or at all as one to sell and transfer to plaintiff said 760 shares of stock in said company.

And so on these issues on the conclusion of plaintiff's evidence, which tended strongly to support his theory of the case and as alleged in the declaration, the circuit court on defendant's motion excluded plaintiff's evidence and directed the jury to return a verdict for defendant, which was done, and the judgment complained of was nil capiat.

Though the contract sued on in addition to the stock was for "all the interests which the said defendant owned in the said Damascus Lumber Company, or properties belonging to the same" standing "either in its own name or otherwise", the real subject matter of the contract was the 760 shares of the defendant in said company, the other interests called for being such as would necessarily follow the stock, unless perhaps it might be the personal claim of the defendant, if any, for indebtedness due from the corporation to him. As thus construed the contract did not directly involve the right or title to lands, and we cannot agree with counsel that the real and vital issue in the case is whether the statute of frauds constitutes a defense to the action.

In our opinion the statute of frauds if at all can be only incidentally involved, not in the primary right of the plaintiff to enforce his contract for the shares of stock, but in the question of the quantum of damages, when it comes to determining what the assets of the corporation are or were, and what damages, if any, the plaintiff may have sustained by the breach by defendant of his contract. While at one time there seems to have been some question whether the shares of stock in a corporation, when the consequent value thereof depended on the use, or ownership of real estate, constituted real property, it is now well settled that shares in such corporation are not real estate directly affected by the statute of frauds. Browne on Statute of Frauds, (5th ed.) section 258, page 337; *Lipscomb* v. *Condon,* 56 W. Va. 416.

And equity as a general rule will not specifically enforce performance of contracts for the sale and purchase of such shares, but will leave the parties to their rights of action at law for damages. *Bumgardner* v. *Leavitt*, 35 W. Va. 194; *Hissam* v. *Parrish*, 41 W. Va. 686; 12 Enc. Dig. Va. & W. Va. Repts. 593. It is only where because of the inadequacy of the legal remedy as when the shares purchased have some peculiar value, and are unobtainable in the market, or have no certain or ascertainable value, that equity will take jurisdiction for specific execution of the contract. *Hogg* v. *McGuffin*, 67 W. Va. 456.

So the primary issue presented by the pleadings and proofs was whether plaintiff had a valid and binding contract for the 760 shares of stock owned by the defendant. That the plaintiff had such a contract, and that the consideration and the terms and conditions thereof were sufficiently definite and certain as to be enforcible we think was fully established by the proof. Certainly the evidence was sufficient to call for a submission of the questions of fact to the jury.

Of course as the contract provided that the price to be paid for the stock was to be determined by an audit of the books of the corporation, and by crediting defendant with moneys paid or advanced with interest, and by charging him with moneys received, as stated, the legal or equitable right and title of the corporation to the lands would be collaterally involved, but this would constitute no impediment in the way of proving with reasonable certainty what damages plaintiff had sustained by the breach of the contract. The submission of this question to the jury and their verdict thereon would not necessarily involve a final adjudication as between the defendant and the corporation; it would only be conclusive of the rights of the parties to the action. The evidence shows that the audit of the books of the corporation was made as called for by the contract, and that defendant was given credit therein for all moneys paid or advanced for lands or other property, with interest, and that he was charged with moneys received from the proceeds of notes and lumber cut from the lands standing in his name and from other lands or timber purchased and belonging to the

corporation. Presumptively the stock contracted for was to be paid up stock, and the evidence shows that defendant had not paid for this stock otherwise than by the advancement of money for lands, mills and other property. So that whether the equitable title to these lands was in the corporation and whether the corporation by reason of part performance of the contract, or otherwise, could probably enforce the contract if not expressed arising by implication, and the manner of dealing therewith between the parties, were all questions which it was competent for the court to submit to the jury, not for the purpose of final adjudication as between Clark and the corporation, but upon the question of the quantum of damages sustained by plaintiff. Such an adjudication would not bind strangers to the contract, or to the litigation, but it would settle the question so far as the rights of the parties to the litigation were concerned. *McClung* v. *McClung,* 78 W. Va. 486, 489; *Mylius* v. *Koontz,* 69 W. Va. 621, 625.

Moreover, as a general rule, promoters of a corporation, not yet organized, especially when their contracts are made for and on behalf of the corporation, are regarded as agents of the corporation, and such contracts become binding upon them, as well as upon the corporation, after organization and acceptance thereof by it. *Spring Garden Bank* v. *Hulings Lumber Co.,* 32 W. Va. 357; *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 203, and authorities cited; Alger on Law of Promoters and the Promotion of Corporations, section 202, et seq.; 7 R. C. L., section 60, p. 81, et seq. And in such cases these authorities say the agent is subject to the disabilities of an ordinary agent, his acts carefully scrutinized, and that he will be precluded from taking any secret advantage of other stockholders. But it is unnecessary we think to go into this question of agency and the liability of defendant to the corporation, if any, on the theory of agency. We are only suggesting a question which might arise as between the defendant and the corporation, and which may be presented collaterally on the trial of the action, if the facts developed should present it.

The views expressed herein, in our opinion, render it un-

necessary to go into the questions of trust relations or equitable estoppel elaborately argued by counsel.

We are of the opinion, therefore, to reverse the judgment, set aside the verdict, and award the plaintiff a new trial, and the judgment will be as indicated.

*Reversed, verdict set aside, new trial awarded.*