# CHARLESTON.

WALLACE v. ECLIPSE POCAHONTAS COAL CO. et *als.*

Submitted January 28, 1919.   Decided February 4, 1919.

1. CORPORATIONS—*Promoters—Contract—Validity.*

   The promoters of a corporation to be formed are as a general rule to be regarded the agents of the corporation, and a contract made by them on behalf of themselves and the corporation when accepted by the corporation after organization is binding upon the promoters and the corporation accepting the benefits of the contract. (p. 326).

2. SAME—*Promoters—Contract—Notice.*

   Notice to the promoters and incorporators of a corporation of the provisions of a contract made for and on behalf of the corporation is notice to the corporation accepting the benefits of the contract. (p. 327).

3. SAME—*Specific Performance—Subscription to Stock—Contract with Promoters.*

   One who sells and transfers to a corporation a lease for coal pursuant to a contract made with the promoters thereof and accepted by the corporation when organized in consideration of stock in the corporation to be issued to him fully paid up sufficient to represent one-fifth interest in the value of the property when fully equipped for mining and producing coal, is entitled under his contract properly construed to stand in the position of a subscriber to so much of the stock as his contract calls for and may in equity enforce specific performance thereof against promoting stockholders and corporation. (p. 328).

4.  SAME—*Transfer of Lease—Consideration—"One-Fifth Interest in the Property Fully Equipped."*

The provision "a one-fifth interest in the property fully equipped" contained in a contract made with promoters of a corporation for the sale and transfer to the corporation of a lease for coal, expressive of the consideration which the seller is to receive in the stock of the corporation, means in the light of the facts and circumstances surrounding the parties in this case a sufficient amount of stock to equal one-fifth of the value of the property ·equipped with tipple, tracks, haulways, cars, and all necessary machinery and motive power to successfully carry on one operation ·on the property. (p. 328).

Appeal from Circuit Court, Mercer County.

Suit for specific performance of contract by J. S. Wallace against the Eclipse Pocahontas Coal Company and others. Decree for defendants, and plaintiff appeals.

*Reversed and remanded.*

*Sanders, Crockett & Kee* and *Russell S. Ritz,* for appellant. *McClaugherty, Scott & Richardson,* for appellees.

MILLER, PRESIDENT:

This is a suit for specific performance of a contract. The ·contract alleged and as the court below found, and we find established by the ·evidence, was made in December 1916, supplemented by one of January 18, 1917, between plaintiff ·and the defendants Perkins and Griffith, the latter acting for themselves and their associates O'Keeffe and Weller, all promoters of the defendant corporation, organized afterward for the purpose of taking over and operating a tract of about ·600 acres of coal in McDowell county, an option for a lease on which was then owned or controlled by the plaintiff. That the plaintiff did have such option when the contract was ·concluded is established by the evidence beyond question ·or cavil, although defendants have undertaken to discredit his right and title thereto.

The substance of the contract was that in consideration that plaintiff would transfer, assign or cause said lease to be assigned or transferred, first to Griffith, trustee, for himself and associates, and by him to the corporation when

formed, the said Perkins, Griffith, O'Keeffe and Weller would advance and supply the necessary money to pay the purchase price for said lease, namely $2,500.00, and to fully equip said property for operation for coal under the said lease, and when so equipped and ready for operation, plaintiff was to have a one-fifth interest in the property fully paid up, and that to effectually and fully carry out the contract the defendant corporation was formed and organized with the definite and positive agreement between plaintiff and the other promoters, acting for themselves on behalf of the corporation, that plaintiff was to have and receive in stock enough to represent a one-fifth interest fully paid up in the corporation. And it is also alleged that of the $25,000.00 capital stock authorized, the estimated amount necessary to cover the cost of the lease and the equipment contemplated by the contract, plaintiff was entitled to receive at least fifty shares of the stock of the defendant corporation, while but five shares had ever been issued to him. The bill further alleges full and complete performance of the contract by plaintiff on his part and failure and refusal of the defendant company and of its promoters, officers and agents to execute the contract on their part. The answers deny the contract as alleged and put in issue the material facts, and the answer of Weller and O'Keffe deny authority of Griffith and Perkins to bind them and want of notice of the alleged rights of Wallace. One Holly Stover, claiming to own some seventy shares of the stock of the corporation, not made a party to the suit, also appeared by petition denying authority of the promoters to make the alleged contract with plaintiff and want of notice thereof and its binding effect on him and the corporation, if made.

The bill, we think, presents good grounds for equitable relief, and the demurrer was properly overruled. This conclusion will be fully justified, we think, by what is to be presented on the merits of the case.

The decree appealed from, which found as a fact that the contract as alleged had been proven, adjudged as the only practicable relief that could be grounded on the present status of the corporation and its stockholders that the plain-

tiff recover of the defendants W. F. Perkins, H. C. Weller, T. J. Griffith and James O'Keeffe, respectively, the sum of one thousand and seventy-five dollars ($1075.00) each, aggregating the sum of $4,300.00, which the court found to be the value of forty-three shares of stock of which he had been deprived, being one-fifth of the shares issued less the five shares delivered to him and two shares contributed by him to another stockholder according to an agreement which has no material bearing on the issues here presented.

The evidence shows that the first meeting of the stockholders of the corporation after obtaining the charter was held on February 20, 1917, pursuant to waiver of notice in writing signed by Griffith, Wallace, Perkins and by Frank Lively and J. W. Kirchenschlager. The minutes of this meeting show that only the twenty-five shares subscribed were at first represented in person or by proxy as follows: Frank Lively by H. C. Weller, his proxy; J. W. Kirchenschlager by L. C. Ayers, his proxy; T. J. Griffith by W. F. Perkins, his proxy; J. S. Wallace by W. F. Perkins, his proxy; and W. F. Perkins in person. Perkins was made chairman of the meeting, and Weller secretary. After acceptance of the charter and the adoption of the by-laws the minutes recite that since the subscription to the twenty-five shares shown by the charter held by said Lively, Kirchenschlager, Wallace, Griffith and Perkins, the said Lively, Mrs. W. F. Perkins, L. C. Ayers and Holly Stover have each subscribed for five additional shares. And thereupon the three present, namely Weller, Ayers and Perkins, as the very next business proposed, proceeded to consider a preamble and resolution, by whom presented does not appear, the manifest purpose of which was to resolute plaintiff as far as possible out of his interest in the property and stock of the corporation basing the proposition on facts differing materially from those alleged and proven in this cause, and as far as material to this decision are as follows:

"AND WHEREAS, it is represented to the meeting that the said J. S .Wallace claims to have had at one time an option upon the property covered by the Deed of Lease from said McDowell Pocahontas Coal Company from the said T.

J. Griffith, the Assignee of said leasehold estate but which option, if such was ever in existence, had expired and terminated before the purchase thereof by the parties contributing the said Twenty Five Hundred Dollars ($2500.00) in cash, and that said Wallace claims that he had an oral understanding or agreement with one or more of the parties so contributing said sum of money that he would be allowed or would be entitled to participate to the extent of one fifth undivided interest in said sum of Twenty Five Hundred Dollars ($2500.00) and that one-fifth of the stock subscribed for and to be issued on account of the payment of the said sum should be issued in his name.

"AND WHEREAS, it is the desire of the stockholders of this corporation that the said Wallace be dealt with in an entirely liberal manner and that he be accorded such consideration as he claims to be entitled to, but without waiving any legal rights said stockholders in this corporation may have.

"NOW, THEREFORE, BE IT RESOLVED, That the Board of Directors to be elected at this meeting of stockholders be and it is hereby authorized and directed through the proper officers of this corporation to issue stock in this corporation as follows:  To Frank Lively, five shares; to J. S. Wallace, five shares; to J. W. Kirchenschlager, five shares; to T. J. Griffith, five shares; to W. F. Perkins, five shares; the same having been paid for by the said Frank Lively, J. W. Kirchenschlager, T. J. Griffith and W. F. Perkins, each contributing the sum of six hundred and twenty-five dollars ($625.00) and the said five shares hereby directed to be issued to the said J. S. Wallace having been paid for by the other parties herein named by contributing the sum of One Hundred and twenty-five dollars ($125.00) on account thereof, and that said five shares of stock so issued to the said Wallace shall be received by him in full and complete satisfaction of any and all claims whatsoever he may have upon any stock of this corporation.  And,

"BE IT FURTHER RESOLVED, that it is not the intention of this Resolution of stockholders to in any wise preclude the four stockholders herein mentioned from the exercise of any legal right whatsoever that they may have against

the said Wallace on account of the five shares of stock herein directed to be issued in his name and paid for in the manner herein set forth."

During the consideration of this preamble and resloution the minutes recite that W. F. Perkins, the chairman, retired from the chair, manifestly because of his fiduciary relation to the company, and particularly to plaintiff as his proxy, and Holly Stover, who, the minutes recite, on account of his subscription to five shares of the stock and the deposit of his check in payment therefor, had been permitted to participate in the meeting, was called to the chair. Thus it appears that Stover, though appearing here as an innocent holder of stock, and practically all the other subscribers of stock had notice of plaintiff's claims and of the proceeding in his absence to undo him by the action of the stockholders, his representative Perkins deserting his post when action was called for. This whole proceeding is manifestly fraudulent, and in the light of the other evidence in the case we have no hesitancy in so characterizing it and putting upon it our seal of condemnation.

On the receipt of the five shares so generously tendered him by these confidential agents of the company and of himself, the plaintiff at once demanded of the secretary an exhibit of the books and minutes, which was denied him, and it was not until after this suit was brought that he was permitted to see the evidence of the wrongs perpetrated upon him.

Upon these showings of right and of wrong and injury, what is the measure of plaintiff's right to relief? He contends on this appeal that he was erroneously limited to money decrees against Griffith, Perkins, Weller and O'Keeffe for sums aggregating the par value of forty-three of the 250 shares issued, instead of a decree against the corporation, either (1) impressing upon the entire property and plant of the corporation as a trust therein his one-fifth undivided interest according to his contract, or (2) a decree requiring the defendant corporation and the other parties to the contract to issue and deliver to him forty-three additional shares to represent a full one-fifth interest in the property fully

equipped as contemplated by his contract, or (3) if not entitled to either of these forms of relief, to a decree against the corporation and the other promoters of the corporation not for the par value but the actual value of the shares to which his contract literally performed would entitle him.

It is quite clear to us that Perkins, Griffith, Weller and O'Keeffe are liable jointly and severally for the stock to which plaintiff is entitled, and if it is possible for them to do so, to respond in stock; but is the corporation not also liable upon a contract made for and upon its behalf and fully executed upon the part of the plaintiff? It is quite clear to us upon reason as well as authority that in this case the corporation as well as the promoters is liable to plaintiff. We recently said argumendo in *McCullough* v. *Clark,* 81 W. Va. 743, 95 S. E. 787, 789, upon the very highest authority, that as a general rule promoters of a corporation not yet organized, especially when their contracts are made for and on behalf of the corporation, are regarded as the agents of the corporation, and such contracts become binding upon them as well as upon the corporation after organization and acceptance thereof by it. Citing *Spring Garden Bank* v. *Hulings. Lumber Co.,* 32 W. Va. 357, 9 S. E. 243; 3 L. R. A. 583; *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 203; Alger on Promoters and the Promotion of Corporations, §206 et seq.; 7 R. C. L. §60, p. 81 et seq.

But it is argued that the corporation and the other subscribing stockholders had no notice of the contract as made. Did it not accept and take advantage of the contract? Is it possible for the corporation to plead ignorance of the terms and conditions of a contract made by its promoters on its behalf, acquire the right and title to valuable property upon terms of payment in cash or credit or for its value in the stock of the corporation, and corporation and promoters thereby escape the burden of its performance? Our answer is, No. In the case at bar not only did the corporation have notice of plaintiff's right through its corporators and agents, but all the stockholders of the corporation participating in the first meeting of stockholders, including Stover, had notice that plaintiff had at least some interest or claim, and Per-

kins and Griffith knew the extent of it, and if not, on inquiry of him all would easily have discovered the full extent thereof. The case of *Mulvihill* v. *Vicksburg Ry. Power & Mfg. Co.*, (Miss.), 40 So. 647, is direct authority on the law of notice to a corporation through its promoters and agents. See also, *Simmons Creek Coal & Coke Co.*, v. *Doran*, 142 U. S. 417; 3 Cook on Corporations, §727; *Newman* v. *Newman*, 60 W. Va. 371, 55 S. E. 377; *Marshall* v. *Hall;* 42 W. Va. 641, 27 S. E. 300; *Barksdale* v *.Finney*, 14 Gratt. 338.

As a prerequisite to a, final adjudication of plaintiff's rights it becomes necessary to determine two questions; first, what is the status or relation of the plaintiff to the corporation under his contract; and, second, what was reasonably contemplated in the provision of the contract for "a one-fifth interest in the property fully equipped?" On the first inquiry we think there can be no doubt that plaintiff's position was that of a subscriber to the capital stock of the corporation. His contract was to sell and convey or cause to be conveyed to the corporation the leasehold and to accept in payment fully paid up stock to the value of the property when fully equipped for mining and producing coal. Being entitled to this amount of stock easily ascertainable when the equipment was completed, he became entitled to the stock, and being so entitled, has not a court of equity jurisdiction by its mandatory process to compel specific performance of the contract? We think it has. Such was the holding in *Mulvihill* v. *Vicksburg Ry. Power & Mfg. Co., supra.* And we have decided that one who has paid his subscription to the capital stock of a corporation may by bill in equity compel the issuance of proper certificates therefor. *Applegate* v. *Wellsburg Banking etc. Co.*, 68 W. Va. 477; *Snyder* v. *Charleston etc. Bridge Co.*, 65 W. Va. 1. We have also held that when shares of stock have some peculiar value to a purchaser and cannot be purchased on the market, or their value is not ascertainable with any degree of certainty, the purchaser may require specific performance of his contract. *Hogg* v. *McGuffin*, 67 W. Va. 456. And we recently decided that mandamus would lie at the suit of a purchaser to compel a corporation and its officers to transfer on its books

shares to which it had been adjudicated he was entitled.
*Citizens National Bank* v. *Consolidated Glass Co.*, 83 W. Va.
1, 97 S. E. 689.   So we think there can be no doubt of the
jurisdiction of a court of equity in the case here presented.

The second question is, what was comprehended in the pro-
vision of the contract "a one-fifth interest in the property
fully equipped."   The subject of the contract was a lease
of coal, which required operation and production to keep it
alive.   The parties must have contemplated at least one oper-
ation and all the necessary equipment such as tipple, track,
haulway, cars, and all necessary machinery and motive power
to successfully carry on the operation.   Counsel for plain-
tiff contend that he is entitled under his contract to have
issued to him from time to time one share for every five
shares of stock issued, so that his interest will always repre-
sent a one-fifth interest in the property.   We do not think
this could have been reasonably within the minds of the con-
tracting parties when entering into the contract.   We re-
cently decided that a contract to make a will in consideration
of certain services to be rendered, giving to plaintiff from
$4,000.00 to $6,000.00 was sufficiently definite and certain to
be enforceable for the least amount provided in the contract.
*Jefferson* v. *Simpson*, 83 W. Va. 274, 98 S. E. 212.   And
we think we would be traveling far afield to hold with coun-
sel that the parties here contemplated any such far reach-
ing consequences.   Besides, with the one operation thor-
oughly equipped the parties would naturally, though not
necessarily, have contemplated after the first operation was
equipped that further developments would be carried on the
credit of the company or out of the income or profits of the
first operation.   But whether so or not the contract must
be given a reasonable construction, and we think to do so
we must limit the rights of plaintiff to one operation.

The contract being so construed, what ought the decree
below to have been?   Of course the court would not have
been warranted in impressing plaintiff's rights and inter-
ests as a trust upon the entire property and plant of the
corporation.   Clearly his contract was to take in payment
stock in the corporation which he helped to organize and to

which he caused the lease to be conveyed. His bill was not framed in any other view, and the contract pleaded entitles him to no other relief or its equivalent. We are clearly of opinion however that the court was in error in limiting him to a money decree severally against the promoting shareholders. While they are no doubt liable jointly as well as severally, so is the corporation liable, as already indicated, either for the number of shares to which plaintiff may be entitled under the contract as now construed, if ascertainable or obtainable, if not, a money decree should be given against the corporation and Griffith, Perkins, Weller and O'Keeffe jointly for the value of the one-fifth of the property equipped for one operation as already stated.

Our conclusion is to reverse the decree and remand the cause with directions to the circuit court to ascertain the value of the plant and property of the defendant corporation fully equipped with one operation as indicated, and if the capital stock then authorized and unissued or issued and outstanding and held by the said Griffith, Perkins, Weller and O'Keffe is sufficient to represent in value such one-fifth interest in said property such number of shares shall be decreed to be issued or transferred on the books of the corporation to plaintiff by the defendant corporation and said promoting stockholders, and if not, then the plaintiff shall be decreed against the corporation and said stockholders jointly a money decree for the value of plaintiff's interest in the property equipped as aforesaid and as ascertained by the court, with interest thereon from the time when plaintiff should have received said shares or the value thereof.

*Reversed and remanded.*