**DOANE AGRICULTURAL SERVICE, INC.,**
**Plaintiff-Appellant,**

**v.**

**NEELYVILLE GRAIN COMPANY, INC.,**
**Defendant,**

**James Agri-Center, Inc., and First National Bank of Doniphan, a banking corporation, Defendants-Respondents.**

**No. 9607.**

Missouri Court of Appeals, Springfield District.

Dec. 3, 1974.

Joe C. Welborn, Briney, Welborn, & Spain, Bloomfield, for plaintiff-appellant.

Norman L. Chadwick, Friedewald & Chadwick, Poplar Bluff, for defendants-respondents.

TITUS, Judge.

Doane Agricultural Service, Inc. (plaintiff), filed suit to recover a $3,750 sales commission (plus 6% interest from May 23, 1970) against the seller, Neelyville Grain Company, Inc. (Neelyville), to have the commission established as a lien on the property sold to James Agri-Center, Inc. (James Agri), and to have the lien declared superior to a deed of trust (securing a $70,000 promissory note) wherein the cestui que trust named was the First National Bank of Doniphan (Doniphan), the buyer's lender. In a jury-waived case the trial court, without formal findings of fact or conclusions of law, entered judgment for plaintiff against Neelyville for the commission plus interest as prayed, but ruled in favor of James Agri and Doniphan upon a finding that plaintiff was "not entitled to a lien on the property, real or personal." Only plaintiff has appealed and the issue here is whether plaintiff is entitled to a lien on the property sold.

Under a July 30, 1969, "Listing Contract," Neelyville appointed plaintiff its "sole and exclusive agent to sell" the "Neelyville Grain Elevator and Fertilizer Plant" consisting of certain real estate, operating equipment and facilities. Inter alia, the agreement provided that if within 9 months after date "the property is contracted to be sold to or exchanged with anyone contacted by" plaintiff within 6 months after the contract date, plaintiff was to be paid "a 5% commission on the total selling or exchange price," which commission "shall be a lien on the property and on earnest money until paid." Since none of the defendants (Neelyville, James Agri or Doniphan) have appealed, we need not detail the evidence which shows plaintiff's entitlement to a commission or the evidence anent the numerous contacts and dealings plaintiff's agent had with the James brothers (Donald, Robert and George, Jr.) to interest them in buying the property.

An undated "Agreement for Sale of Real and Personal Property and Receipt for Earnest Money," which was acknowledged March 25, 1970, by the president of Neelyville (the seller) recited, in part, that the seller had "this day sold to the Buyers" (the James brothers above named) certain real estate described in Exhibits A & B (a part of the contract) and that in part payment thereof and as earnest money therefor the buyers had paid seller the sum of $1,000. The contract further provided that "Seller also agrees to sell and the buyers agree to buy" the personal property, vehicles, and other goods or equipment listed in Exhibits C & D attached to and made a part of the agreement. The agreed sale and purchase price was $75,000 plus the value of "merchandise held for sale" to be computed "on invoice prices from Wholesaler to the Seller." From the cash purchase price was to be deducted certain specified obligations owed by seller, which buyers assumed and agreed to pay, and any other obligations found to be owing by seller after compliance with Art. 6, Uniform Commercial Code, Bulk Transfers, § 400.-6–101 et seq. RSMo 1969, V.A.M.S. The contract also stated "that this agreement and the performance thereof is contingent upon the Buyers securing a loan of Thirty Thousand Dollars ($30,000.00) from a bank in Poplar Bluff, Missouri, to be secured by a first Deed of Trust on real estate on which is located the grain elevator, which is the real estate described on Exhibit A attached hereto."

James Agri was incorporated as a Missouri corporation on April 16, 1970. Its

incorporator was George E. James, Jr. The James brothers (Donald, Robert and George, Jr.) constituted its officers and directors.

Plaintiff's lawyers wrote identical letters, dated April 27, 1970, addressed to "James Brothers, Corning, Arkansas; James Brothers, c/o Neelyville Grain Company, Neelyville, Missouri; First National Bank of Doniphan, Doniphan, Missouri and Ron Newcomb, c/o Neelyville Grain Company, Neelyville, Missouri." Ron Newcomb was the sole stockholder of Neelyville. The letters were sent via certified mail from Dexter, Missouri, on April 28, 1970. A "Return Receipt," an exhibit in the case, showed that Doniphan received the letter addressed to it on April 29, 1970. The letters contained a copy of the "Listing Contract" and admonished: "Please take note that this contract is for a commission for the sale of Neelyville Grain Elevator and Fertilizer Plant and the contract further provides that the commission shall be a lien on the property." Continuing, in substance, the letter stated that plaintiff understood the property had been sold to the James brothers and that Doniphan "is making a loan for the purchase price, that plaintiff contacted the James brothers for the sale of the property, that plaintiff claims a commission pursuant to the terms of the [enclosed] contract," that no part of the commission had been paid, and unless arrangements were made to pay the commission at final closing, plaintiff "will take steps to perfect its lien and will claim a lien on the property to the extent of its commission." Donald James, one of the James brothers, admitted having received the letter "on or about April 27th," 1970.

By "General Warranty Deed" dated May 23, 1970, Neelyville conveyed the real estate to James Agri who, on the same date, executed a deed of trust to secure the $70,000 note above mentioned. How or when the other property involved in the transaction was transferred from seller to buyer, is not shown in the record. The note and deed of trust were signed on be-

half of the corporation by "George E. James, Jr.—President" and attested by "Donald R. James."

■ If the judgment of the trial court can be said to be suggestive of a finding that James Agri had no notice of the Listing Contract and plaintiff's claim of a lien before it purchased the real property in question, then we must rule that such a finding is inconsistent with and not supported by the evidence. Likewise untenable is the assertion of James Agri that plaintiff's claim to a lien must fail because James Agri, a corporation, bought the property without notice or knowledge of plaintiff's claims and contract. Irrespective of what knowledge the James brothers (Donald, Robert and George, Jr.) may have had before April 1970, nevertheless when they admittedly received a copy of the listing contract together with the letter written by plaintiff's lawyers under date of April 27, 1970, they became personally charged with notice and knowledge of what plaintiff was claiming and why. As the incorporator, officers and board of directors of James Agri consisted of none other than the James brothers, the corporation was simply their alter ego and the corporation was, therefore, bound by their knowledge. Schneider v. Schneider, 347 Mo. 102, 110, 146 S.W.2d 584, 589–590 (1940); In re Super Trading Co., 22 F.2d 480, 482 [5] (2d Cir. 1927); Trayer v. Bristol Parking, 198 Va. 595, 95 S.E.2d 224, 230 [5] (1956); Religious Films v. Potts, 197 S.W.2d 592, 595 [8] (Tex.Civ. App.1946); Monotype Co. of California v. Guie, 134 Wash. 81, 234 P. 1046, 1047 [1] (1925); Wallace v. Eclipse Pocahontas Coal Co., 83 W.Va. 321, 98 S.E. 293, 295 [2] (1919); 3 Merrill on Notice, § 1222, pp. 158–160. Consequently, James Agri and Doniphan are held to have had knowledge of plaintiff's contentions and the provisions of the listing contract before the warranty deed and deed of trust were executed and delivered on May 23, 1970. Whether James Agri and Doniphan had, or should have had notice before transfer

of the other involved items occurred, is something we cannot decide from the transcript.

As contended by plaintiff, and not seriously contested by defendants James Agri and Doniphan on appeal, if those defendants had actual notice of the listing agreement and plaintiff's claims (which we have ruled they did insofar as the real estate was concerned), plaintiff's contract subjected the property sold by Neelyville to an equitable lien, or in the case of personalty, to what is more accurately described as a security agreement. § 400.9–102 RSMo 1969. The principles governing equitable liens are so well documented and discussed in Pine Lawn Bank and Trust Company v. Urbahns, 417 S.W.2d 113 (Mo.App.1967) and Sidney Smith, Inc. v. Steinberg, 280 S.W.2d 696 (Mo.App.1955), they need not be repeated here.

Although we conclude the judgment nisi must be reversed and remanded to atone for that erroneous portion thereof which denied plaintiff a lien, at least on the realty, we observe that the parties have mistakenly assumed an oversimplified nearing to a complex problem which we cannot untangle from the inadequate facts reposing in the present record.

Upon remand we suggest that additional proof, consideration and proceedings should be had with the following in mind:

(1) The properties subject to a lien or liens should be properly classified and catalogued as to whether they be (a) real estate, including fixtures, or vehicles as defined by § 301.010 RSMo 1969, or (b) goods.

(2) As to items falling in category (1)(a), supra, the court and the parties should bear in mind the general rule that for one to qualify as an innocent purchaser, protected against equitable claims, he must have paid the purchase price, or a substantial part thereof, before receiving notice of such claims, and that the mere creation of an obligation to pay through making a contract does not constitute the giving of value. Benson v. Watkins, 313 Mo. 426, 434–435, 285 S.W. 407, 408 [2, 3] (1926), and cases noted in 28A Missouri Digest, Vendor and Purchaser,

(3) As to items in category (1)(b), supra, the court and parties need to determine if § 400.1–201(44) RSMo 1969, extends the definition of value to include the creation of an obligation to pay and whether plaintiff, as the holder of an unperfected security interest, is subordinate to the rights of James Agri to the extent James Agri gave value *and received delivery*, if so, without knowledge of the security interest and before it was perfected. See § 400.9–301(1)(c). Evidence as to when James Agri took possession in relation to the time it had notice of plaintiff's claims, is essential to deciding this facet of the case.

(4) As to all items, the court and parties need decide, since buyer agreed to assume certain obligations of seller, the applicability vel non of "the principle that a grantee who pays the lien against the grantor is subrogated to the rights of a lienholder and is entitled to a superior right as against other creditors." Starman v. John Wolfe, Inc., 490 S.W.2d 377, 383 (Mo.App.1973).

The foregoing by no means contains all the matters the court and parties must consider in correctly applying the liens to which plaintiff may be entitled. The examples, supra, are given to illustrate that the problem is not simple.

The judgment is reversed and the cause remanded.

HOGAN, C. J., and STONE, BILLINGS and FLANIGAN, JJ., concur.