## COUNTY OF FRANKLIN,

AT THE

### JANUARY TERM, 1881.

PRESENT:

Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD, } Assistant Judges.
Hon. JONATHAN ROSS,
Hon. WHEELOCK G. VEAZEY,

---

PURMONT TABOR *v.* S. T. CILLEY, L. A. CILLEY AND IRA
E. HUNT, ASSIGNEE OF S. T. CILLEY'S ESTATE.

### [ IN CHANCERY. ]

*Parol Evidence to Reform Writing. Error of Fact. Bill to
Reform and Enlarge a Mortgage.*

1. In a proceeding in equity to reform a mortgage, *parol* evidence is admissible to
   prove the *real* contract.
2. Courts of equity will not refuse redress if it is certain that the written contract
   conveys a *different right*, or, effectuates a *different purpose* from that intended
   by the parties ; and will treat the mistake as one of *fact*.
3. But courts of equity will not *reform* and *enlarge* a mortgage *executed by one who
   is insolvent* if the rights of third parties would be changed and injured thereby.
   In this case, *if the mortgage had been larger when it was given, the other creditors
   would have instituted proceedings in insolvency* before the orator's lien became
   absolute.

HEARD at the September Term, 1879, upon bill, answer and the
master's report. ROYCE, Chancellor, decreed that the mortgage

be reformed so as to embrace the sum of $2920.70, the amount of $2750, the sum due when the mortgage was given. The orator brought his bill to foreclose his mortgage and to have it reformed and enlarged. The facts found by the special master sufficiently appear in the opinion of the court.

*Edson, Rand & Cross*, solicitors for the orator.

The orator is entitled to have his mortgage reformed. 1 Story's Eq. s. 153. In cases of mistake in written instruments courts of equity will interfere to reform, not only as between the original parties, but *between those claiming under them in privity*, as personal representatives, heirs, devisees, legatees, *assignees* and voluntary grantees. 1 Story's Eq. s. 165.

An assignee in bankruptcy or insolvency is a party claiming under the bankrupt or insolvent in privity. He takes the property subject to all legal and equitable claims of others. He is affected with all equities which can be urged against the bankrupt or insolvent, and in this case the orator is entitled to the same relief against him that he has against the mortgagor. *Kelly* v. *Scott*, 49 N. Y. 602; *Cook* v. *Tullis*, 18 Wall. 341; Cutler's Mass. Insolvent Law, 63. See also *Hart* v. *F. & M. Bank*, 33 Vt. 252.

*George A. Ballard* and *Davis & Stevens*, for the defendants.

This, if a mistake at all, is a mistake of law and not of fact. Courts do not rectify mistakes of this kind. *Mellish* v. *Robertson*, 25 Vt. 603; *Howard* v. *Puffer*, 23 Vt. 365; *McDaniels* v. *Bank of Rutland et al.*, 29 Vt. 230. Parol evidence not admissible to enlarge the written contract. *Irnham* v. *Child*, 1 Bro. C. C. 92; *Hare* v. *Shearwood*, 3 Bro. C. C. 168.

The assignee stands in place of and represents the creditors of the defendant Cilley, who was insolvent when the mortgage was made. In re *Hinds et al.*, 3 B. R. Qo. Ed. 91; In re *Metzger*, 2 B. R. Qo. Ed. 114; In re *Leland et al.*, 10 Blatch. 503; 10 N. B. R. 475; Story Eq. Juris. ss. 139, 64 c.; *Hunt* v. *Rousmaniere's Admr.*, 1 Peters, 1.

The opinion of the court was delivered by

REDFIELD, J.   The orator seeks by his bill to reform and enlarge the mortgage, so that it may include other than the notes expressly named in it.

The defendant Cilley, at the time the mortgage was executed, was indebted to the orator in the sum of $2750, specified in six promissory notes, five of which were for $500 each, and one for the sum of $250.   The two first notes, only, are named in the mortgage, amounting to $1000.   The mortgage contains an accruing clause in these words, viz. : " And also for the payment to said Tabor, his heirs and assigns, of all other sums of money which may hereafter become due from said Cilley to said Tabor on promissory notes or otherwise."   This secured such indebtedness, as should thereafter accrue and become payable.   The master reports that the mortgage was read to the orator and the defendant, and both parties were satisfied with the language used as expressing the *contract* made by the parties.   The master also finds the fact that the parties intended to secure the six notes and all future indebtedness ; and supposed the language used in the mortgage, embraced in meaning and effect, the six notes.

I.   The objection of the defendants that parol testimony is not admissible, to show that the actual contract was different from that expressed in the deed, we think, is not well taken.   The jurisdiction of a court of equity, to reform a contract, and make it conform to the actual agreement of the parties, is well established ; and from the nature of the case, when the written contract expresses a different agreement, the actual and real contract can only be proved by parol evidence.

II.   The parties having expressed concurrence and satisfaction with the language of the deed, and having executed it, with full knowledge of the language of the contract, it is claimed there is no error of *fact;* and if there be a mistake, it is, rather, a mistake of *law,* against which there can be no relief in this court. But when the written contract, as applied to the subject-matter, conveys a different right, or effectuates a different purpose, from

that intended by the parties; and that is made clear and certain, courts of equity will not refuse redress, although the language of the contract was intentionally used, and will treat the mistake as one of *fact.*

III. The defendant Cilley, the mortgagor, was insolvent, at the time the mortgage was executed. It was competent for the unsecured creditors, by legal proceedings, to have obtained an equal distribution of the mortgaged property among all the creditors. The master's report states that Josiah White, a creditor of Cilley to the amount of $300, examined the records at the town clerk's office, and found that the mortgage secured only $1000 of old indebtedness, and made inquiry of Cilley as to the state of his indebtedness to the orator, and was informed by him, that the orator was to advance money, to pay Cilley's unsecured debts; and that White would have instituted proceedings in insolvency, before the orator's lien became absolute, if he had not understood that $1000 of old indebtedness was all that was secured by the mortgage. And that one Hunt signed a note, as surety for said Cilley, for the sum of $250, understanding and believing, that the orator's mortgage was only $1000, which he would not have done if he had supposed the orator's mortgage was for $2750—the entire value of the farm.

It is certainly, not in the natural and ordinary course, that one attempting to secure *six* notes, should *name* but *two*, and use no language in the deed, that would indicate or give the least intimation, that he held more than the two notes described in the deed. There is, at least ground for suspicion, that the mortgage was thus written, to lull the creditors into security, and avoid proceedings in insolvency. The fact is found in the case, that such has been its operation. The rights and interests of third parties would be changed to their detriment, if the orator should now be allowed to reform and enlarge the mortgage; and to that extent it would operate as a fraud upon them.

The decree of the Court of Chancery is reversed, and cause remanded, with directions to enter a decree for the orator covering the two notes described in the mortgage with interest. The costs to be equitably apportioned by the Court of Chancery.