FREDERICK MAY v. ALBERT M. ADAMS.

[In Chancery.]

*Deed. Mistake. Reform. Grantees.*

Two tenants in common divided their lands by deed of partition. There was a mutual mistake in the deed, which consisted in that the words and figures "*north 45 degrees 30 minutes west*" did not correctly describe the line agreed on. The agreed line was recognized and understood by them to be the one described in the deed, so long as they were the owners; and the parties to this suit purchased with a like understanding, and also recognized it for several years; *Held*, that the mistake was remediable in equity, both as between the original owners and their grantees.

BILL IN CHANCERY. Bill *pro forma* and without hearing dismissed at the September Term, 1885, VEAZEY, Chancellor. This case was heard at the January Term, 1885, of the Supreme Court, and decided at the next term of said court. It was alleged in the bill, among other facts:

" That in order to have said deeds describe said line so agreed upon accurately, the said parties applied to Charles Abell of Orwell, in the county of Addison, who was a surveyor, and who had formerly surveyed said tract of land, and who had an old map of the same, to obtain and give to them the course and direction of said line so by them agreed upon as aforesaid; that instead of going upon said land and surveying said land, said Abell put his protractor upon the lines of said old map at a point where he supposed said old line so agreed upon for a division line between the owners making partition would strike the easterly line of said lot, and took a direction across said map that would reach about the center of the westerly line of said lot, and told said parties that a line from the hemlock tree upon the ledge, which said surveyor supposed to be the easterly terminus of said old fence, and from thence run-

ning north forty-five degrees 'and thirty minutes west. a distance of two hundred and twenty rods, would describe the line of said old fence to the said highway; that said parties both supposing that said course and direction given them by said Abell was the correct course and direction of said old fence, the said line was described in said quit-claim deed from Marshall T. Doane to Levi B. Doane as running from said hemlock tree north forty-five degrees and thirty minutes west, two hundred and twenty rods, to the east line of said highway."

*J. C. Baker*, for the orator.

Chancery will correct a mistake of this character, and perfect the conveyance according to the intent of the parties.

The defendant has no equity to be protected. Making the deeds describe a line substantially on the fence will give him all he contracted for, or supposed he got; and a reformation of these deeds can only result in exact justice between the complainant and defendant. *Bush* v. *Hicks*, 60 N. Y. 298; *Winnipiseogee Co.* v. *Perley*, 46 N. H. 83; *Bailey* v. *Woodbury*, 50 Vt. 166; *Wilcox* v. *Lucas*, 121 Mass. 21; *Broadway* v. *Buxton*, 43 Conn. 283; *Beardsley* v. *Knight*, 10 Vt. 185; *Shattuck* v. *Gay*, 45 Id. 87; *Tabor* v. *Cilley*, 53 Id. 487; *Bank* v. *Vose*, 23 Me. 98; *Adams* v. *Stevens*, 49 Id. 362.

*R. C. Abell*, for the defendant.

The court is not asked to make the deed what the parties intended, for they made it just as they intended, and they understood the location of the tree. What the orator wants is to have the line established as he thinks they would have intended if they had understood the matter to be as he claims. Story Eq. 160.

It is not the business of the court to make contracts for the parties, but rather to give effect to what the parties in-

tended, but which they have failed to express as they intended. *Leavitt* v. *Palmer*, 3 N. Y. 39; *Hunt* v. *Rousmanesi's Adm'r*, 2 Mason, 368; Story Eq. 138, 150; Kerr Fr. 442; *Stoddard* v. *Hart*, 23 N. Y. 562; *Sawyer* v. *Hovey*, 3 Allen, 332.

A person who seeks to rectify a deed on the ground of mistake must establish in the clearest and most satisfactory manner that the alleged intention, to which he desires it to be made conformable, continued concurrent in the minds of all parties down to the time of its execution, and must be able to show exactly and precisely the form to which the deed ought to be brought. *Stockbridge* v. *Hudson Iron Co.* 107 Mass. 290; 6 Ves. 339.

The opinion of the court was delivered by

WALKER, J.  The bill was brought to reform certain partition deeds executed by and between Marshall T. Doane and Levi B. Doane of a parcel of land which they owned as tenants in common, and of which divided portions the orator and defendant are now the owners as the grantees from said Levi and Marshall.

It clearly appears from the evidence that Marshall T. Doane and Levi B. Doane in December, 1875, agreed upon a division of the parcel of land described in the orator's bill of complaint, which they held as tenants in common, by adopting as the division line between their respective portions of said parcel, a line beginning at a well established corner in the east line of the highway on the westerly side of the parcel described in the bill of complaint, 102 rods and 20 links northerly from the southwest corner of said lot of land, and running easterly on the old fence (which was originally a division fence dividing this parcel at an earlier time when one part was owned by Tehan Doane and the other by Amasa Briggs) in nearly a straight line on a course of about south 41 degrees east from said established corner, to a point on "Cobble Hill," so called, where said old fence en-

tered the woods, at the end of said nearly straight old fence about 1,425 feet east from the center of said highway west of said established corner, thence continuing in a straight line to a hemlock tree standing on a ledge in an angle of the fence on the west line of James H. Gleason's land.

Immediately after making their said agreement the Doanes mutually applied to C. E. Abell, a surveyor, to assist them in making a description of their respective portions of said parcel. Abell had a map of the whole parcel, showing the locality of the hemlock tree and a corner in the east line of said highway; and as the Doanes and Abell supposed and believed that the old fence which they had agreed upon as the division line, as aforesaid, was in a straight line between the hemlock tree and the established corner in the highway, Abell ascertained by the use of the protractor the course from said hemlock tree to said established corner, as indicated on his map, to be north 45 degrees 30 minutes west, and the distance by the scale to be 220 rods; and made a description of the two portions by adopting as the partition line the course of north 45 degrees 30 minutes west from said hemlock tree 220 rods; and the deeds of partition between Marshall and Levi executed December 10, 1875, adopted the line thus ascertained by Abell as the division line; all believing it ran in the locality of this old fence, but which in fact ran to the north of it, whereby Levi, who by the partition had the north part of the parcel, by mutual mistake conveyed to Marshall several acres more of land than their said agreement called for. After the execution of the deeds of partition Levi and Marshall went into the occupancy and possession of their respective portions, and occupied and claimed title to the line of said old fence from the highway to end of the nearly straight old fence on "Cobble Hill," and thence in a straight line to the hemlock tree corner, and so continued to occupy and claim while they owned.

The parties to the division understood the language of the deeds describing the division line, but they believed that the description in the deeds corresponded with the actual division boundary of their respective portions under their agreement of partition and were mutually mistaken therein. Both parties understood their contract of division alike; both understood they were executing deeds of partition dividing the whole parcel by the line of the old fence to the "Cobble," and thence in a straight line to the hemlock tree, and believed that the deeds executed by them expressed their intention. By their mutual mistake in describing the division line of the partition in their deeds the intention of both parties was misrepresented. The mistake consisted in supposing that the description adopted in the deeds expressed the intention of the parties and applied to the land intended to be conveyed by the one to the other, whereas it did not, but embraced several acres of land on the north of the line agreed upon as the division line, and consequently Levi, by his deed, conveyed to Marshall more land than their agreement called for. A mutual mistake of this character is a ground in equity for reforming deeds of partition.

Deeds may be reformed not only in cases where the mistake consists in the omission or insertion of words or clauses contrary to the intention of the parties, but in cases where the parties understood what language was contained in the deed if they believed the description corresponded with the actual boundaries intended, and were mistaken therein. *Johnson* v. *Taber,* 10 N. Y. 319; *DeRiemer* v. *Cantillon,* 4 Johns. Ch. 85; *Bush* v. *Hicks,* 60 N. Y. 298; *Bailey* v. *Woodbury,* 50 Vt. 166; *Tabor* v. *Cilley,* 53 Vt. 487.

It is clear, then, that as between the original parties to the agreement of division, the deeds of partition may be reformed so as to conform to the actual line of division made by them in their said agreement.

The question that next arises, is, whether the deeds may

be reformed as between the orator and defendant, who are the grantees of said Marshall T. and Levi B. Doane.

Marshall T. Doane conveyed his portion of the parcel lying southerly of the division line to the defendant March 1, 1877. At this time there was no fence or other indications of a line on the course of north 45 degrees 30 minutes west from the hemlock given in the deeds of partition, and there was no survey made at that time showing where such a line would run with reference to the practical location of the line made by the Doanes. The old straight fence running east from the highway was there; Marshall was in possession of the southerly part and claiming to the line of the old fence as the division line; and Levi was in possession of the northerly part and claiming to the same fence as the division line.

It is quite evident that Marshall did not intend to sell any part of the lot lying north of the practical division line referred to. This is manifest from the fact that the line of division agreed upon by him and Levi had been recognized by him and Levi as the division line from the date of their agreement, and both understood their deeds to conform to their line of occupancy. It is also clear that the defendant never supposed he was purchasing any land lying north of the old fence from the highway to the "Cobble." Immediately previous to his purchase, the parties, in company with several other persons, went upon the premises and spent some time in examining them with a view to purchase. The evidence clearly establishes that on that occasion Marshall T. Doane pointed out to the defendant the boundaries of the land proposed to be sold; that the defendant was shown the hemlock tree as the eastern terminus of the division line and the old straight fence as being in the line, and shown about where the division line would run through the woods east of the "Cobble," and although the defendant was told by Marshall T. Doane that the division line was a straight line from the hemlock to the end of the

old fence on the highway, and that it had not been run out, yet the defendant did not understand that the running of the line was essential for any purpose except to establish the line through the woods between the hemlock and the "Cobble." He clearly could not have understood from the representations made to him that a survey of the parcel would change the location of the division line from the locality of the old straight fence pointed out to him as being on the line. This is made evident from the fact that the meadow land was valuable and that the defendant immediately after his purchase went into possession of the land included in his purchase, occupying up to the division fence mentioned as the practical line of division, without objection, and by himself and tenants treated it as the division line between him and the orator for some three years and down to July 1, 1880, when he ascertained from a survey that the course of north 45 degrees 30 minutes west from the hemlock given in the deed as the division line ran to the north of the old division fence and that the description of the deed embraced a narrow strip of land lying north of the old fence. After this survey he began to assert his claim to the division line as established by the survey, and removed a part of the old fence to it.

May 23, 1877, Levi B. Doane conveyed his portion of the divided land to the orator and pointed out to him this practical line of division upon the old fence as agreed upon between him and Marshall in 1875 as the division line.

Both the orator and defendant received from their grantors substantially the same representations as to the division line between the two parcels, and after their purchases they occupied to the same old fence as the division line without objection until the survey of July, 1880, as aforesaid. Before the survey both supposed and understood that the division line given in the deeds of partition ran as pointed out to them by their grantors on the old straight fence from the established corner on the highway east to the end of the

straight fence near where it entered the woods on "Cobble Hill" and thence in a straight line to the hemlock tree.

The defendant clearly did not purchase relying upon the mistaken description of the division line in the deeds of partition between the Doanes, and he has no equity to be protected in the premises beyond being secured in his title to all the land that he understood at the time of his purchase was included in his deed. He bought with full knowledge of the Doanes' understanding as to the location of the division line and upon a view and practical location thereof from the highway to the woods on the "Cobble" and recognized it down to the time of the survey in 1880.

He knew what the Doanes considered and treated as the true intent and design of the deeds of partition as to this division line, and stands in no better condition in equity than the original parties to the deeds of partition, and to that extent the deeds may be reformed as to him. *Freeman's Bank* v. *Vose*, 23 Me. 98; *Adams* v. *Stevens*, 49 Me. 362.

With the deeds reformed making the division line to follow the old fence running from the established corner on the east side of the highway to the "Cobble" and thence in a straight line to the hemlock tree, the defendant is secured in his title to all the land that he understood his deed included at the time of his purchase, and the orator is entitled to have the deeds of partition reformed as against the defendant so as to conform to the practical location of the division line as made by the Doanes and understood by the orator and defendant at the times of their respective purchases.

The result is that the *pro forma* decree of the chancellor dismissing the bill is reversed and cause remanded with mandate to enter a decree for the orator; that the deeds of partition between Marshall T. and Levi B. Doane set out in the bill be reformed to conform to the actual agreement of partition between them as held herein; that the defendant

deed to the orator all the land embraced in his deed from Marshall T. Doane which lies north of the line agreed upon by the Doanes as the division line; and that the defendant be perpetually enjoined and restrained from entering upon or claiming under his deed from Marshall T. Doane any of said parcel lying north of the division line as agreed upon by the Doanes.