[No. 18578. *En Banc.* April 16, 1925.]

MONOTYPE COMPANY OF CALIFORNIA, *Appellant,* v. E. H. GUIE, *as Receiver of American Publishing Company, Respondent.*[1]

SALES (178)—CONDITIONAL SALES—ASSIGNMENT—BONA FIDE PURCHASERS—EVIDENCE—SUFFICIENCY. Where property is by a conditional sales contract purchased by associators in a contemplated common law trust, with the intent that it should become the property of such trust when the organization was completed, which soon followed, there is no warrant for a finding that two trusts were created, and that the completed trust was a *bona fide* purchaser from the first one.

SAME (176)—CONDITIONAL SALES—RECORDING—TIME FOR—DELIVERY —SEPARATE PARTS OF SAME TRANSACTION. Where a single contract of conditional sale included property at different places requiring delivery at different times, the filing of the bill of sale between the dates of the deliveries was timely and within Rem. Comp. Stat., § 3790, requiring such filing within ten days "after the taking of possession by the vendee," where there was no unusual delay, and existing obligations of creditors were not incurred between the time

[1]Reported in 234 Pac. 1046.

of the first and last deliveries; and it is immaterial that the first delivery constituted a complete machine by itself, and was more than ten days before the filing (TOLMAN, C. J., and MAIN, J., dissenting).

Appeal from a judgment of the superior court for King county, Dykeman, J., entered December 13, 1923, upon findings in favor of the defendant, in an action to recover property held by a receiver as assets of an insolvent. Reversed.

*Peters & Powell* and *Robert W. Reid,* for appellant.
*Paul Houser* and *D. V. Halverstadt,* for respondent.

FULLERTON, J.—The record in this cause, as it was transmitted to this court, is somewhat meager. We gather therefrom, however, that in the early part of the year 1922, certain persons of the city of Seattle associated themselves together for the purpose of forming what is known as a common law trust, under the name of the American Publishing Company; the object and purpose of the association being to publish a daily paper, in the city named, to be known as the Seattle Daily American. Articles of agreement purporting to create such a trust were prepared, but for some reason not explained in the record were not executed. Nor were such articles prepared and executed until March 23, 1923, and then, perhaps, only after some change in the personnel of the associators. One of the associators was William J. Davis. Immediately after the association was formed, but long prior to the execution of the final formal organization, he began to assemble the equipment necessary to the publication of the paper.

On March 22, 1923, he contracted to purchase, on behalf of the association, from the appellant, Monotype Company of California, by a contract of conditional sale, a monotype machine with certain described acces-

sories. On that day a conditional sale contract was made out, but it was executed only by the vendor. The property sold was listed in a schedule on the back of the contract to which proper references were made in the body of the instrument. On the next day, March 23, 1922, additional accessories were purchased from the appellant. These were listed on the back of the first instrument immediately following the first list, and some changes were made in the body of the instrument. The parties attached to the instrument a further writing which is denominated a rider. This recites that it is made a part of the original contract. It recites that the equipment first described is to be shipped from the city of Spokane, Washington, and is to be accepted by the purchaser "as is." It further recites that the additional equipment is to be shipped from the monotype factory at Philadelphia, and, as to it, certain warranties are made. This rider was signed by both of the parties—the purchaser signing it, "Seattle Daily American, by Wm. Jas. Davis, Publisher." The purchaser, however, did not sign the original instrument. The equipment purchased which was then at the city of Spokane was shipped to the purchaser and delivered to it on April 4, 1922. The equipment described in the second list was delivered to the purchaser on June 22, 1922. The contract of conditional sale was filed with the auditor of King county, the county in which the vendee resided, on April 20, 1922.

On July 10, 1922, Wm. Jas. Davis, acting for and on behalf of himself and his associates, purchased certain other equipment from the appellant, likewise on a contract of conditional sale. This contract was signed by both purchaser and seller, the purchaser signing under the name of "American Publishing Co., Wm. Jas. Davis." It was filed with the auditor of King county on September 5, 1922. A part of the articles purchased

was delivered to the purchaser, but the evidence is uncertain as to the quantity delivered or the time of the delivery, at least, we are unable so to ascertain from the record.

The trust thereafter began the publication of a paper at the city of Seattle. The enterprise met with disaster and the trust became insolvent. On May 29, 1923, at the suit of a creditor, it was placed in the hands of a receiver; E. H. Guie, the respondent on this appeal, being appointed as such. The receiver gave notice for the presentation to him of claims against the trust, and claims in a large sum were presented. Later on, the appellant appeared in the receivership proceedings and petitioned the court for an order directing the receiver to turn over to it the property described in the contracts of conditional sale. Issue was taken by the receiver on the allegations of the petition, and a trial had in which evidence was introduced by both parties. On the evidence, the court found in favor of the receiver, resting its conclusion principally upon the ground that there was a common law trust organized which preceded the trust of March 27, 1923, for which the receiver was appointed, and that it was to this preceding trust that the property in question was sold; further finding, with reference to the property described in the first of the contracts, that the last mentioned trust "is a purchaser in good faith for value of all of said personal property mentioned above and described, and without knowledge of said conditional sale contract." With further reference to this contract, and as an additional reason for holding the contract invalid as to a part of the property, it found that the contract represented two separate and distinct purchases, that the property described in the first purchase was a complete machine, that the property described in the second purchase

was not necessary for its use or operation, and that the
contract of conditional sale was not filed for record
within ten days after the delivery of the machine, "as
by statute in such cases made and provided." With
reference to the property described in the second con-
ditional contract of sale, the court likewise found that
it was sold to the first of the trusts, and that the sec-
ond trust became a purchaser of the property for
value and in good faith without knowledge of the exist-
ence of the contract. In neither instance did the court
specifically find from whom the second trust purchased
the property, but presumably it is meant that it pur-
chased it from the first of the trusts.

We can find no justification in the evidence for the
major part of these findings. The evidence is clear
that there was but one trust formally organized. As
we have before indicated, there was an early associa-
tion of persons for the purpose of organizing a trust,
and their negotiations were long continued, but the
ultimate result was the organization of only one trust.
Nor was there any evidence of an assignment of the
property purchased while the trust was in the process
of formation, from the associators, or from anyone, to
the trust which was finally organized, much less was
there evidence of a purchase of the property in good
faith and for value by the trust. In so far as we can
discover from the record, the property was purchased
with the intent that it should become the property of
the trust when its organization should be completed,
and that, when this event occurred, it was so treated,
without any assignment or sale, either formal or other-
wise. The evidence concerning the purchase repre-
sented by the first contract of conditional sale, we
think, justifies the conclusion that it was one trans-
action rather than two. Doubtless, the property under
consideration in the negotiations had on the first day

was the property then in the city of Spokane. But the transaction was not completed on that day. The purchase was on conditional sale and the contract of sale then prepared was not executed. On the next day, before its execution, there was included in the purchase some additional property. Instead of preparing a new contract, the parties, evidently as a labor-saving device, patched up the old one. This, when completed, was properly executed, and, in our opinion, represented but a single, entire transaction. With reference to the property represented by the second contract of conditional sale, we likewise fail to find any evidence that the trust purchased it from any one, or received it in any different manner than it received the first.

From these considerations, we conclude that the judgment entered by the trial court cannot rest on the ground on which that court placed it. The contracts being contracts of conditional sale, the vendor did not, as matter of fact, part with its title to the property it thereby contracted to sell, and as between itself and the purchaser it still has such title. This must be true whatever view is taken of the status of the purchaser. If it be said that the associators and the trust subsequently organized are distinct entities, then the associators were the contract purchasers, and, since there was no contract of sale from the associators to the trust, the trust holds it without title and as a naked possessor only. If, on the other hand, it be said that the trust was the actual purchaser, it is bound by the terms of the contracts of purchase. If, therefore, the vendor has lost its title to the property, it has done so by operation of law, and the determination of this question rests in the answer to the further question, whether the vendor has complied with the statutes re-

lating to sales of property under contracts of conditional sale.

The statute provides (Rem. Comp. Stat., § 3790) [P. C. § 9767]:

"That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides."

To recapitulate the controlling facts relative to the first transaction, the contract of conditional sale was entered into on March 22 and 23, 1922; a part of the property thereby contracted to be sold was delivered to the vendee on April 4, 1922, and the remainder on June 22, 1922; between the dates of these deliveries, namely, on April 20, 1922, the contract was filed with the auditor of King county, that county being the county wherein the vendee, at the time it took possession of the property, resided.

It seems to us that there was here a sufficient compliance with the statute on the part of the vendee in the contract to maintain its title. There was but a single contract of sale which could only be completed by a delivery of all of the property. The contract involved property at different places and in different situations, which from the nature of things could not all have been delivered at the same time. The property was delivered, in so far as the record discloses, without unusual delay and in ordinary course. There is no evidence that any

of the existing obligations due to creditors were incurred between the time of the first delivery and the filing of the contract. It seems manifest, therefore, that had the contract been filed within ten days after the last delivery, it would have been valid as to creditors, and we think it equally so since it was filed subsequent to the first delivery but prior to the last.

Such is the purport of our prior holdings. In *Anderson v. Langford,* 91 Wash. 176, 157 Pac. 456, there was a sale of a mangle under a conditional sale contract. Parts of the mangle were delivered on December 27, 1913. More than ten days thereafter the remaining part was delivered. The contract of conditional sale was filed within ten days of the last delivery, and we held it to be in time to comply with the statute.

In *Mentzer v. Commercial Lumber Co.,* 110 Wash. 155, 188 Pac. 9, the articles purchased were delivered at different times, a part before and a part after the filing of the contract of conditional sale. It appeared, also, that a part of the property sold was delivered more than ten days prior to the filing of the contract, and that more than ten days elapsed between the deliveries. We held the contract valid as against creditors of the purchaser.

It is true that, in each of these cases, the court somewhat stressed the point that the article purchased constituted a complete machine and that the contract was not completed until all of the parts of the machine were delivered. But we cannot think this marks a distinction between those cases and the present one. The contract here was single and entire, and, equally with the cited cases, nothing but a complete delivery of all of the property purchased could be a compliance with the contract in this respect. As to the articles involved in the first contract of sale, therefore, we think

the trial court was in error in holding there could be no recovery.

As to the second of the contracts, the appellant does not seriously contend that it was filed within the time limited by the statute. It argues, however, that the conditional sale contract was valid as between the vendor and the actual vendee; that the actual vendee was some entity other than the trust, and that the trust has not shown any connected title between itself and the vendee. But we think, without further elaborating the question, that, under the facts shown, the associators and the trust are so far the same entity as to require the court, when considering the rights of creditors, to treat them as such. Since, therefore, the conditional contract of sale was not timely filed, it is absolute, under the terms of the statute, as to creditors becoming such either before or after the formal execution of the agreement of trust.

For the error noticed, the judgment is reversed and the cause remanded with instructions to enter a judgment in accordance with this opinion.

MACKINTOSH, BRIDGES, MITCHELL, and PARKER, JJ., concur.

HOLCOMB, J., concurs in the result.

TOLMAN, C. J. (dissenting)—I do not question the doctrine of *Anderson v. Langford*, 91 Wash. 176, 157 Pac. 456; and *Mentzer v. Commercial Lumber Co.*, 110 Wash. 155, 188 Pac. 9, but those cases rest upon the theory that the articles purchased, when assembled and put in place, would constitute a complete machine and the contract was not complied with until all of the parts of the machine were delivered. With that doctrine I agree; but those cases should not be extended to cover a case such as this, involving a single contract, but separate and distinct articles and machines. It is

manifest that, if the doctrine is so extended; the recording statute may be nullified by making but a single contract covering numerous articles and providing for their delivery in long-delayed installments. To recognize such a course would entirely wipe out the recording statute and renew the evils which it was intended to cure.

I therefore dissent from the conclusions reached by the majority with reference to the first contract discussed.

MAIN, J., concurs with TOLMAN, C. J.