[No. 28880. Department Two. September 7, 1943.]

THOMAS MALOTT, *as Trustee, Respondent,* v. GENERAL MACHINERY COMPANY, *Appellant.*[1]

[1]Reported in 141 P. (2d) 146.

*Brown & Brown* and *E. D. Weller,* for appellant.

*Newton Henton,* for respondent.

ROBINSON, J.—This action was brought by the trustee of the bankrupt estate of Ira Telford Moore against the General Machinery Company for damages for the alleged conversion of a quantity of mining machinery claimed to have been the property of the bankrupt. After a trial before the court, a money judgment was entered against the defendant, from which this appeal has been taken.

There are two questions to be determined: (1) Whether the court was in error in finding that no partnership relation existed between Ira Telford Moore and Firmer Walkley, and (2) whether the sale of the machinery involved was absolute as to the creditors of Ira Telford Moore.

On June 21, 1940, the General Machinery Company, as vendor, and Telford I. Moore (the same person as will be referred to herein as Ira Telford Moore) executed an entire written conditional sales contract for the sale and purchase of a quantity of mining mill machinery. The terms of payment, so far as are material here, were $600, to be paid upon the signing of the contract, and "$1200.00 upon delivery of equipment but not later than July 1." The contract provided that: "Possession of said property was/will be taken by said party of the second part on the 21 day of June, 1940."

In the opening part of the contract, the vendee is named as "Dr. Telford I. Moore and Firmer Walkley, a mining co-

partnership d. b. s. Last Chance Mine," but Dr. Moore individually executed it as vendee. The contract was filed in the office of the auditors of Spokane and Stevens counties July 2, 1940; so that, if the date of delivery of the property was June 21, 1940, as stated in the contract, it was void as to subsequent creditors of Dr. Moore, by the terms of Rem. Rev. Stat., § 3790 [P. C. § 9767]. The contract as to the payment of the purchase price was breached by the vendee, and the machinery was repossessed by the appellant (vendor) between October 20 and 28, 1940. A few days later, Dr. Moore filed a voluntary petition in bankruptcy in the United States court, was adjudged a bankrupt, and the respondent was appointed and qualified as trustee.

The appellant sought to defeat the action brought against it by the respondent, on the theory that, if the machinery was the property of anyone other than itself, it was that of a partnership consisting of Ira Telford Moore, the bankrupt, and Firmer Walkley, and, hence, Moore's trustee could not maintain this action. We do not deem it necessary to make a review or an analysis of the evidence received and considered by the court on the question of partnership status. We have carefully examined the record, and we are of the opinion that the appellant did not establish the existence of a partnership by a preponderance of the evidence, and hold that the trial judge was correct in so finding.

Rem. Rev. Stat., § 3790, is as follows:

"That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides."

We have hitherto held that, when a conditional sales contract has therein a contractual provision or recital

fixing or stating the date of delivery of the property to the vendee, the contract must be filed within ten days therefrom in the office of the county auditor of the proper county in order to be effectual as to all bona fide purchasers, pledgees, mortgagees, encumbrancers, and subsequent creditors. *Grunbaum Bros. F. Co. v. Humphrey Inv. Corp.*, 141 Wash. 329, 251 Pac. 567, and the same case on rehearing, 144 Wash. 620, 258 Pac. 517.

To avoid the effect of this rule, the appellant pleaded and submitted proof to the effect that, when the contract was made and signed June 21, 1940, it was known to, and contemplated by, the parties that the greater part of the machinery would have to be manufactured, and that actual delivery would not, and could not, be made until at least July 15th, and, in all probability, not earlier than five or six weeks later. It was further shown that a few of the parts were in fact delivered between June 25th and 28th, the major part in July, and a smaller part in August, and that it took all that was delivered to make a complete operating mechanism. The court was asked to reform the contract accordingly, which, if done, would have made it effective under the rule of *Anderson v. Langford*, 91 Wash. 176, 157 Pac. 456; *Mentzer v. Commercial Lumber Co.*, 110 Wash. 155, 188 Pac. 9; and *Monotype Co. of California v. Guie*, 134 Wash. 81, 234 Pac. 1046. These are cases wherein personal property was sold by an entire conditional sales contract, to be delivered as a complete article or machine before the sale and delivery were to be deemed to be complete, and it was held that, under the statute, a filing of the contract was timely if the vendor filed it within ten days after such complete delivery.

The evidence submitted by the appellant was sufficient to warrant the reformation of the contract as between the parties on the ground of mutual mistake, but reformation could not be permitted here, because an instrument cannot be reformed so as to affect the rights of innocent third persons. *Seward v. Spurgeon*, 9 Wash. 74,

37 Pac. 303; *Billings v. Billings,* 156 Wash. 505, 287 Pac. 46; notes, 44 A. L. R. 78 and 102 A. L. R. 825.

■ It is true that these authorities deal principally with the rights of innocent purchasers and encumbrancers, and, in this instance, it is sought to reform as to general creditors only. As a general rule, reformation may be had as to general creditors, since, ordinarily, they have no lien or other preference right against the subject matter of the instrument sought to be reformed. However, in so far as the rights of third parties are concerned, in the case of a conditional sales contract, our statute puts subsequent creditors in the same category as purchasers and encumbrancers. The statute provides that, if its provisions are not complied with, the sale

" . . . shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers *and subsequent creditors, whether or not such creditors have or claim a lien upon such property,* . . . " (Italics ours.)

It must follow that a conditional sales contract cannot be reformed so as to affect the rights of bona fide subsequent general creditors. One would expect to find much apposite judicial authority, but, if it exists, our research has not disclosed it. However, when we consider the purpose of such a recording act as Rem. Rev. Stat., § 3790, it is apparent that to lay down a rule permitting reformation of a conditional sales contract to show a different date of delivery than that set out therein, would be to open the way for the destruction of rights of general creditors which it is the evident purpose of the statute to protect.

There is not, however, a complete want of authority. We have found several early decisions which are in point. Of these, *Lally v. Holland,* 1 Swan (Tenn.) 396, a decision so old that the property involved was a slave, is, perhaps, the best considered. The statute under consideration in that case provided that deeds of trust and mortgages of real and personal property were required to be recorded, and took effect and were valid, "as to all subsequent purchasers for valuable consideration without notice, and as

to all creditors," only from the time they were proved or acknowledged, and delivered to the clerk of the proper court to be recorded. There was a mistake made in drafting the instrument before the court. If the instrument were reformed, it would have affected the rights of those the statute was designed to protect, in that they would have had constructive notice of the content of the instrument. The instrument, as it was written and recorded, did not give them such notice. It was held that, as the object of registration was to give notice to creditors and subsequent purchasers, they had the right to presume that the instrument, as recorded, spoke the truth and expressed fully the true intention of the parties, and they could not be expected, or required, to look beyond its face as it appeared upon the record; nor could they be charged with notice of anything beyond. Reformation was denied as to those protected by the recording statute. See, also, to the same effect, *Straman v. Rechtine*, 58 Ohio St. 443, 51 N. E. 44; *Tabor v. Cilley*, 53 Vt. 487.

█ It is provided, in one clause of the contract relating to the time of payment of the purchase price, that $600 had been paid, and, in another paragraph, that $1,200 would be paid upon delivery of the equipment, "but not later than July 1." This, the appellant contends, should have put a prudent person on inquiry, from which he would have learned that, despite the wording of the contract, a complete delivery of the property was not to be made on June 21st. It seems to us that the ordinary layman would have the right to conclude that the vendee was required to pay $600 when the contract was signed, and had the option to pay an additional $1,200 on June 21st, even though this was the day the contract was signed, or to do so not later than July 1st. We infer from the record that the contract was prepared by the appellant, and, if so, if there is any ambiguity, it must be construed against it and in favor of anyone who might be misled, to his detriment, by the language used.

The conditional sales statute, like other statutes, such as the statutes of limitation and the statute of frauds, is a general law designed to promote justice. In some instances, as in the present case, their application seems to produce an unjust result. Yet experience has shown that, in the long run, it is better that such statutes should be strictly applied than that they should be distorted and weakened by attempts made in individual and particular cases to arrive at so-called natural justice.

The judgment is affirmed.

SIMPSON, C. J., BEALS, BLAKE, and GRADY, JJ., concur.

