304 F.2d 224
 PACIFIC FINANCE CORPORATION, and Strato Motors, Inc., Appellants,
v.
Eleanor EDWARDS, Trustee in the Matter of W. J. Myers, Whose
Wife Is Elsie Myers, Bankruptcy Cause No. 46653, Appellee.
 No. 17439.
 United States Court of Appeals Ninth Circuit.
 June 15, 1962.
 
 Alex Wiley, Seattle, wash., for appellant.
 Frederic P. Holbrook, Seattle, Wash., for appellee.
 Before BONE, JERTBERG and DUNIWAY, Circuit Judges.
 JERTBERG, Circuit Judge.
 
 
 1
 Following a hearing on an order to show cause issued by the Referee in Bankruptcy directed to the appellants, the Referee ordered that the conditional sale contract between the appellants and the bankrupt covering the purchase of a Cadillac automobile, was null and void as to the Trustee, and directed the Trustee to sell the automobile free and clear of the lien claims of the appellants.
 
 
 2
 The order of the Referee was affirmed by the District Court upon appellants' petition for a review of the order.
 
 
 3
 The cause was submitted to the Referee under a stipulation of facts, the stipulation providing that the facts therein set forth 'are the only ones to be considered by the Court.'
 
 
 4
 The facts stated in the stipulation are, as follows:
 
 
 5
 'I.'
 
 
 6
 'That Eleanor Edwards is the duly appointed, qualified and acting trustee in bankruptcy of the above-entitled estate.
 
 
 7
 'II.'
 
 
 8
 'That at the date of adjudication in bankruptcy herein, on April 1, 1960, bankrupt had in his possession one 1958 Cadillac automobile, which had been sold on conditional sale contract to bankrupt by Strato Motors, Inc., on November 10, 1959; that said contract and said automobile were assigned and transferred to Pacific Finance Corporation immediately after the execution of said conditional sale contract. That by mutual mistake of the parties thereto, said conditional sale contract was dated October 10, 1959, but that the true date of its execution was November 10, 1959; that possession of said automobile was not given to bankrupt until November 10, 1959; that said conditional sale contract was filed in the office of the County Auditor of King County, Washington, on November 12, 1959. Said contract recites that delivery of said automobile is acknowledged by the purchaser. There is now unpaid and owing on said conditional sale contract the sum of $2,616.40; the only claim asserted by the trustee as to the invalidity of said conditional sale contract is based upon the fact that said conditional sale contract is dated October 10, 1959, and same was filed in the office of the County Auditor on November 10, 1959.
 
 
 9
 'III.'
 
 
 10
 'That after the execution of said conditional sale contract by bankrupt, to wit, on February 16, 1960, the wife of bankrupt, Elsie Myers, entered into a conditional sale contract with McKale's for the purchase of certain supplies and accessories for a 1955 Plymouth automobile; that said automobile was community property of W. J. Myers and his said wife; that at the time of the filing of the petition in bankruptcy herein the amount owing on said conditional sale contract had not been paid, but that said amount was paid in full in the sum of $42,00 on June 7, 1960, by respondents.
 
 
 11
 'IV.'
 
 
 12
 'That there existed at the time of the filing of the petition in bankruptcy herein, and there now exists, no creditors of said bankrupt whose claims were incurred after October 10, 1959, who have provable claims against said estate, except insofar as the Court may construe McKale's to be a subsequent creditor; it being understood that said trustee claims, by reason of the facts above set forth, that McKale's is a subsequent creditor; and respondents claim that McKale's never was a subsequent creditor having a provable claim against the above estate, and that McKale's is not now a creditor of any kind against the above estate.
 
 
 13
 'V.'
 
 
 14
 'That respondent, Strato Motors, Inc., immediately after entering into its conditional sale contract with bankrupt, applied to the Director of Licenses of the State of Washington for a transfer of title to said automobile, showing W. J. Myers as the registered owner and Pacific Finance Corporation as the lien holder; and that a motor vehicle certificate of ownership was duly issued by the Department of Licenses of the State of Washington, showing W. J. Myers as said registered owner and Pacific Finance Corporation as the lien holder of said automobile.'
 
 
 15
 In order to focus the legal question presented in this appeal, attention must be called to the reference in Paragraphs III and IV of the stipulation to a conditional sale contract in the amount of $42.00 (which remained unpaid at the time of bankruptcy) entered into between the wife of the bankrupt and McKale's for the purchase of certain accessories for a 1955 Plymouth automobile.
 
 
 16
 The part of the stipulation appearing in said paragraphs pertinent to this appeal appears in Paragraph IV wherein it is stated, 'That there existed at the time of the filing of the petition in bankruptcy herein, and there now exist, no creditors of said bankrupt whose claims were incurred after October 10, 1959, who have provable claims against said estate, except insofar as the Court may construe McKale's to be a subsequent creditor; * * *.' In his findings of fact, the Referee found:
 
 
 17
 'That there was in existence at the date of adjudication, a creditor whose obligation was incurred by the Bankrupt subject subsequent to the purchase of said automobile, being the McKale Service Station of Seattle, Washington.'
 
 
 18
 However, the Referee in his certificate on review filed with the District Court stated the question on review, as follows:
 
 
 19
 'In a proceeding under 70c (second sentence) of the Chandler Act, can a Trustee in Bankruptcy succeed to the rights, remedies, and powers of a lien creditor upon property in the possession of the Bankrupt upon which there is, as of the moment of the filing of the Petition in Bankruptcy, a security instrument which, under the laws of the State of Washington, is invalid as to subsequent creditors, without proving the existence of a subsequent or lien creditor which a provable claim?'
 
 
 20
 On this appeal, the Trustee does not contend that McKale's was a creditor of the bankrupt on the date of bankruptcy. The changed position of the Trustee is obviously based upon the fact that under the law of the State of Washington no title whatever passes under a conditional sale contract of personal property, and that the relationship of debtor and creditor is not created. Holt Manufacturing Company v. Jaussaud, 132 Wash. 667, 233 P. 35, 38 A.L.R. 1312 (Feb. 16, 1925); Lahn & Simmons v. Matzen Woolen Mills, 147 Wash. 560, 266 P. 697 (Apr. 14, 1928).
 
 
 21
 The sole position of the Trustee on this appeal is that the order of the District Court must be affirmed because of the powers granted to a trustee under the provisions of Sec. 70, sub. c of the Bankruptcy Act, 30 Stat. 565, 11 U.S.C.A. 110. This Section gives a trustee the status of a hypothetical creditor who obtains a lien on a bankrupt's property by legal or equitable proceedings at the date of the filing of the bankruptcy petition. Section 70, sub. c, in pertinent part, provides:
 
 
 22
 'The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists.'
 
 
 23
 Section 63.12.010 of the Revised Code of the State of Washington, in relevant part, provides:
 
 
 24
 'that conditional sales of personal property, when the property is placed in the possession of the vendee, shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers, and subsequent creditors whether or not such creditors have or claim a lien upon the property, unless within ten days after the taking possession by the vendee a memorandum of the sale * * * is filed in the Auditor's office in the county wherein, at the date of the vendee's taking possession of the property, the vendee resides.'
 
 
 25
 In the absence of a controlling provision in the Bankruptcy Act, the vulnerability of a security transaction to attack by the Trustee depends on the creditor laws of the jurisdiction in which the bankrupt is located. Duffy v. Charak, 236 U.S. 97, 35 S.Ct. 264, 59 L.Ed. 483 (1915); Holt v. Crucible Steel Co., 224 U.S. 262, 32 S.Ct. 424, 56 L.Ed. 756 (1912). See also Exchange National Bank of Colorado Springs v. Hough, 258 F.2d 785 (10th Cir., 1958).
 
 
 26
 Both parties agree that under the law of the State of Washington, a conditional sale of personal property is void against subsequent creditors of the conditional vendee if there is a failure to file a memorandum of the sale within 10 days after the taking of possession of the property by vendee, and that decisions of the Supreme Court of Washington preclude reformation of such contract on the ground of a mutual mistake so as to effect the rights of bona fide subsequent general creditors. Grunbaum Bros. Furniture Co. v. Humphrey Inv. Co., 141 Wash, 329, 251 P. 567 (1926); and Malott v. General Machinery Co., 19 Wash.2d 62, 141 P.2d 146 (1943). The vulnerability of a tardily filed memorandum of a conditional sale of personal property to attack by subsequent general creditors cannot be cured by a subsequent filing of the memorandum and the lien of the conditional vendor is voidable at the instance of subsequent general creditors whether or not credit was extended before or after the late filing of the memorandum. Hence, the lien of the conditional vendor in the instant case was vulnerable to attack by subsequent general creditors of the vendee up to the date of bankruptcy since the automobile was in the possession of the bankrupt on such date. In many states the security instrument is ineffective as to creditors who come into existence during the period of nonrecordation and not as to creditors who come into existence following the period of late recordation. Such, however, is not the law of the State of Washington.
 
 
 27
 Thus the question presented to us for resolution may be stated as follows:
 
 
 28
 Does 70, sub. c vest a trustee as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien on the property of the bankrupt by legal or equitable proceedings, whether or not such a creditor actually exists, in the absence of a creditor of the bankrupt who could have obtained a lien on such property at the date of bankruptcy?
 
 
 29
 We have reached the conclusion that the answer to the question must be in the negative and that the order of the District Court confirming the Referee's order in the instant case must be reversed.
 
 
 30
 Under its plain language, 70, sub. c applies only where there is property, whether or not coming into the possession or control of the Court, 'upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, * * *.' We believe that the word 'creditor' in the foregoing quoted language means an actual creditor. Such construction is confirmed by the remainder or 70, sub. c which provides that the trustee 'shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists.' The clause 'whether or not such a creditor actually exists' refers only to a 'creditor then holding a lien thereon.' Under our construction of 70, sub. c the Trustee is empowered to exercise the powers given him even if no actual creditor has obtained a lien, but he cannot do so if no actual creditor could have obtained a lien. In the instant case, as presented to us, there was in existence at the date of bankruptcy no actual subsequent creditor of the bankrupt who could have obtained a lien on the Cadillac automobile at the date of bankruptcy. For such reason, the Trustee could not acquire the hypothetical status of a creditor holding a lien because the existence of an actual creditor who could have obtained a lien is a condition to the acquisition by the Trustee of the status of a creditor holding a lien.
 
 
 31
 We are further convinced that the conclusion which we have reached is commended by the rationale, if not the holding, of the Supreme Court of the United States in Lewis v. Manufacturers Nat. Bank, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). The Lewis case arose in the State of Michigan. Prior to bankruptcy the bankrupt borrowed money from a bank, giving as security a chattel mortgage on an automobile. The Michigan statute had been construed to require the chattel mortgage to be filed immediately with the Register of Deeds, and unless so filed the chattel mortgage was void as against creditors who extended credit in the interim between the date of the instrument and it filing for record. See In re Alikasovich, 275 F.2d 454 (6th Cir., 1960). The chattel mortgage was dated November 4, 1957 and filed for record on November 8, 1957. On April 18, 1958 the borrower filed a voluntary petition in bankruptcy and an adjudication of bankruptcy followed, petitioner being named trustee. There was no evidence that any creditor had extended credit to the bankrupt between November 4th and November 8th, 1957. The Referee held that the mortgage was void as against the trustee because the mortgage had not been immediately recorded. The District Court overruled the Referee, and the Court of Appeals affirmed the District Court. In re Alikasovich, supra. The Supreme Court affirmed, holding that the rights of creditors-- whether existing or hypothetical-- to which a trustee succeeds under 70, sub. c are to be ascertained as of the date of bankruptcy and not at an anterior point of time, stating:
 
 
 32
 '* * * The rule pressed upon us would deprive a mortgagee of his rights in States like Michigan, if the mortgage had been executed months or even years previously and there had been a delay of a day or two in recording without any creditor having been injured during the period when the mortgage was unrecorded.
 
 
 33
 'That is too great a wrench for us to give the bankruptcy system, absent a plain indication from Congress which is lacking here.' Lewis v. Manufacturers Nat. Bank, supra, 364 U.S. at pp. 609-610, 81 S.Ct. at p. 350.
 
 
 34
 In the instant case, as in the Lewis case, there was no actual creditor of the bankrupt who extended credit after October 10, 1959 and prior to the date of bankruptcy. There was no creditor of the bankrupt who was injured. In the course of its opinion, after reviewing the legislative history leading up to the enactment of 70, sub. c and 70, sub. e in their present form, the Supreme Court stated, 364 U.S. at p. 608, 81 S.Ct. at p. 350:
 
 
 35
 '* * * Section 70e enables the trustee to set aside fraudulent transfers which creditors having provable claims could void. The construction of 70c which petitioner urges would give the trustee power to set aside transactions which no creditor could void and which injured no creditor. That construction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy.'
 
 
 36
 In our view, the quoted language applies with equal force to the instant case. It is true that in the instant case the period of time during which a creditor able to attack the transaction might have come into existence extended to the date of bankruptcy. The fact is, however, that no such creditor did come into existence who could have obtained a lien at the date of bankruptcy. We see no difference in principle between the instant case and the Lewis case in which no creditor able to attack the transaction came into existence during the period of non-recordation of the chattel mortgage.
 
 
 37
 A review of the history of 70, sub. c indicates that the objective was to place the trustee in the shoes of the creditor rather than those of the bankrupt, which was his position before former 47, sub. a(2) was added in 1910. The 1910 amendment did not contain the phrase 'whether or not such a creditor actually exists.' This was added in 1938 when the Chandler Act was adopted. It was retained when the Section was recast in 1950 (64 Stat. 26) and in 1952 (66 Stat. 430). When the statute was last amended, in 1952, there was inserted for the first time, the qualifying language 'upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy.' We find nothing in these changes, or in the legislative history, indicating an intent on the part of Congress to penalize the security holder by giving to the trustee the status of a hypothetical creditor holding a lien at the date of bankruptcy in instances where there existed no actual creditor who could have obtained a lien on the property of the bankrupt by legal or equitable proceedings at such date.
 
 
 38
 The Trustee argues that the effect of reversing the order of the Referee in the instant case would be to equate the provisions of 70, sub. c with the provisions of 70, sub. e, thereby making 70, sub. c unnecessary. We do not agree. The plain language of 70, sub. e enables a trustee to set aside transfers which under any Federal or State law applicable thereto is fraudulent as against or voidable for any other reason by any debtor of the creditor having a provable claim. In our view, 70, sub. c grants to the Trustee the status of a lien creditor whenever an actual creditor exists who could have become a lien creditor but did not do so.
 
 
 39
 In contending that the existence of an actual creditor who could have obtained a lien on the property of the bankrupt at the date of bankruptcy is immaterial to the exercise by the Trustee of the rights, remedies, and powers granted by 70, sub. c, the Trustee cites the decisions of this Circuit in National Bank of Bakersfield v. Moore, 247 F. 913 (1918) and Sampsell v. Straub, 194 F.2d 228 (1956). If any language appearing in the National Bank of Bakersfield decision could be so construed, such language is pure dictum. The decision discloses that there were at the date of bankruptcy in that case unpaid creditors of the bankrupt without notice of the existence of the mortgage. We find that the question under review was not considered in Sampsell v. Straub, supra.
 
 
 40
 The order of the District Court confirming the order of the Referee in Bankruptcy is reversed.